**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

HSBC BANK USA,
NATIONAL ASSOCIATION,

                  Plaintiff,

v.                                               CIVIL ACTION NO. 3:12-cv-00668

RON RESH and
VALERIE REYNOLDS-RESH,

                  Defendants .

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Transfer Venue, and For a More Definite Statement. ECF No. 10. For the reasons set forth below, the Motion is **DENIED**.

**INTRODUCTION**

In this case, HSBC Bank USA ("Plaintiff") is seeking to recover alleged deficiencies that arose after foreclosure on deeds of trust to three commercial properties in Beckley, Morgantown, and Huntington, West Virginia. Plaintiff seeks to recover against Ron Resh and Valarie Reynolds-Resh individually ("Individual Defendants") and as the trustees of two different trusts, the Resh Living Trust and the Valarie Reynolds-Resh Living Trust ("Trust Defendants").

The alleged deficiencies are based on three notes signed by the Reshes as trustees of the Trust Defendants, and three personal guarantees of the notes, signed by the Reshes as individuals. Specifically, the total face value of the notes was $2,745,000.00: a $930,000.00 note issued for the purchase of the Huntington property, a note of $982,500.00 for the Beckley property, and a note of

$832,500.00 for the Morgantown Property.[1]  The Resh Living Trust was obligated on all three notes, and the Valarie Reynolds-Resh Living Trust was obligated on the $982,500.00 note for the Beckley property.   All three notes were executed on April 27, 2006.   Both Ron Resh and Valarie Reynolds-Resh, as individuals, executed unconditional guarantees on all three notes on the same day.

Prior to the purchase, Ron Resh visited West Virginia on one occasion and visited the properties.  The notes were made payable to BLX Capital, LLC f/k/a BLC Capital Corp., with payment to be made to BLX Capital's offices in New York, New York.   The Defendants executed the notes in California, and the notes expressly give their holder the option to choose whether the each note will be governed by the laws of New York or the laws of the State where the collateral is located, here, West Virginia.   Each Note also contains an identical "Jurisdiction/Venue" clause which reads as follows:

> It is understood and agreed that this Note and all of the Loan Documents were negotiated and have been or will be delivered to Lender in the State of New York, which State the parties agree has a substantial relationship to the parties and to the underlying transactions embodied by this Note and the Loan Documents.  Maker agrees to furnish to Lender at Lender's office in New York, N.Y., all further instruments, certifications and documents to be furnished hereunder.   The parties also agree that if collateral is pledged to secure the debt evidenced by this Note, that the state or states in which such collateral is located each have a substantial relationship to the parties and to the underlying transaction embodied by this Note and the Loan Documents.

*Notes*, ECF No. 1-1.  Plaintiff alleges that the Trust Defendants defaulted on their obligations

---

[1] The values of the notes and locations of the properties are taken from the Notes themselves, attached as Exhibit A to Plaintiffs Complaint, and the assignment documents, attached as Exhibit A to Defendants' Motion to Dismiss.   These differ from the values and locations in Defendants' Memorandum of Law.   For the purpose of resolving the motion, the Court assumes that the inconsistencies are the result of typographical error.

2

under the notes in May 2009, and that in late December 2011, following notice and publication, Plaintiff foreclosed and sold the properties for a total of $555,100.   In this action, Plaintiff seeks to recover deficiencies alleged to be owed under the notes.[2]   Plaintiff seeks to recover principal and interest, as well as costs, fees, expenses, and attorney's fees from both the Individual and Trust Defendants.   Defendants claim to be the victims of fraud and negligence, and claim that the notes and individual guarantees are unenforceable.   At this stage, Defendants have moved to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue.   Additionally, Defendants have moved to dismiss Plaintiff's claim for interest at the default rate provided by the notes, and request a more definite statement from Plaintiff as to which state law they contend applies to this action.[3]

## DISCUSSION

### A. Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2)

"When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff to ultimately prove grounds for jurisdiction by a preponderance of the evidence."  *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (*citing Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1989)).   When deciding a personal jurisdiction motion without a hearing, the plaintiff is required only to make a prima facie showing of personal jurisdiction, and the Court must take all factual disputes and reasonable inferences in favor of the plaintiff.  *Id*.

---

[2] Defendants have indicated that they may challenge the validity of the assignment by which Plaintiff claims to have acquired the notes from BLX Capital, LLC, f/k/a BLC Capital Corp.

[3] In their responsive memorandum, Plaintiffs have provided a more definite statement. Specifically, they contend that West Virginia law will govern this dispute.   Accordingly, Defendants' Motion for a More Definite Statement is **DENIED as moot.**

3

Ordinarily, the determination of personal jurisdiction involves a two-step inquiry.  *Carefirst,* 334 F.3d at 396.  First, the Court must have statutory authority to exercise jurisdiction.  Second, the exercise of jurisdiction must comport with Due Process.  *Id*. (*citing* Fed. R. Civ. P. 4(k)(1)(A)).  However, where a state long-arm statute has been interpreted to be coextensive with the limits of the Due Process Clause, the statutory inquiry necessarily merges with the Constitutional inquiry.  *Id*.  West Virginia's long-arm statute, W. Va. Code § 56-3-33, has been consistently interpreted as coextensive with the requirements of due process.  *See In re Celotex Corp.*, 124 F.3d 619, 627 (4th Cir. 1997).  Accordingly, the only question before the Court is whether the exercise of personal jurisdiction over the Individual and Trust Defendants would be consistent with the Due Process Clause.

Assertions of personal jurisdiction are reviewed for compatibility with the Due Process Clause of the Fourteenth Amendment.  *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).  The Due Process analysis ultimately requires a determination of whether the defendant has sufficient "minimum contacts" with the forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  *Carefirst*, 334 F.3d at 396 (*citing International Shoe*, 326 U.S. at 316).

As the Supreme Court explained, "[o]pinions in the wake of the pathmarking *International Shoe* decision have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2486 (2011) (citing *Helicopteros Nationales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, nn. 8, 9 (1984).  In order to find so-called "specific jurisdiction," a defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the

4

benefits and protections of its laws." *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 475 (1985). "The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id*. (internal quotations and citations omitted). This analysis requires consideration of: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397. In *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273 (4th Cir. 2009), the Fourth Circuit identified eight "nonexclusive factors" for consideration in determining whether a Defendant has purposely availed him or herself of the privilege of doing business in the forum state:  (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with residents of the forum state regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum.  *Id*. at 278.

There is nothing in this case to suggest that either the Individual or Trust Defendants have engaged in such continuous and systematic activities in West Virginia to justify an exercise of general jurisdiction.  Specific jurisdiction, however, is another matter.  Upon a review of the

complaint, exhibits, memoranda, and affidavits submitted by the parties, the Court is satisfied that Plaintiff has made a prima facie showing that the Court has personal jurisdiction over all of the defendants.

The purpose behind the transactions was for the Trusts to reap the financial benefit of long-term leases of the three West Virginia properties. The defendants did more than reach out to West Virginia. They purchased property as an investment, and Mr. Resh visited the state to inspect those properties prior to the purchase. The Trusts, as parties to the Notes, specifically agreed that they have a significant relationship to West Virginia, the situs of the collateral. As such, the Court has no trouble concluding that the Trust Defendants have purposefully availed themselves of the privilege of conducting activities in West Virginia and have sufficient minimum contacts with this forum such that the exercise of personal jurisdiction over the Trust Defendants does not offend traditional notions of fair play and substantial justice.

Though it presents a closer question, the Court is satisfied that Plaintiff has made the necessary jurisdictional showing with regard to the Individual Defendants as well. It is reasonable to infer, as Plaintiff has suggested, that the Trusts would not have been able to secure financing for the properties without the guarantees of the Individual Defendants, that the profits anticipated by the Trust Defendants would benefit the Individual Defendants, and that the Individual Defendants guaranteed the notes in anticipation of those benefits. In *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134 (6th Cir. 1982), the Sixth Circuit approved of the exercise of jurisdiction over a nonresident defendant who had never set foot in the forum state and whose only relationship to the forum was a marital interest in stock of the defendant corporation whose debt she had personally guaranteed. *Id.* at 1137. It was the opinion of the Sixth Circuit that "the guaranties, when signed

by a person with an economic interest in the corporation, furnished the necessary minimum contacts." *Id*. In this Circuit, another district court has noted that, "courts routinely exercise personal jurisdiction over out-of-state guarantors when their guarantees are governed by the laws of the forum state, or guarantee the obligations of business enterprises located in the forum state." *Bistro of Kansas City, Mo., LLC v. Kansas City Live Block 125 Retail, LLC*, Civ. A. No. ELH-10-2726, 2011 WL 1063800, at *12 (D. Md. March 18, 2011) (collecting cases from across the country). It is reasonable, based on the language of the notes, to infer the possibility that both the guarantees and the notes would be governed by West Virginia law. The individual guarantees were necessary to facilitate the Trusts' West Virginia business venture. The Reshes serve as Trustees and it is reasonable to infer that they make decisions for the Trusts. Their relationships to West Virginia are much closer than the *National Can* defendant's relationship to Kentucky. Their actions were deliberate and were targeted at the acquisition of the three properties that are the subject of this dispute. The defendants are not being haled into this jurisdiction "solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475. Defendants' motion to for lack of personal jurisdiction is **DENIED**.

   **B. Motion to Dismiss or Transfer Venue Pursuant to Fed. R. Civ. P. 12(b)(3)**

Alternatively, Defendants ask the Court to dismiss or transfer venue. The venue statute, 28 U.S.C. § 1391, provides three alternative bases for laying venue in a particular district. Under § 1391(b)(1), venue is proper in the district where any defendant resides, if all defendants are residents of the state in which the district is located. Section 1391(b)(2) provides that venue is proper in the district in which a substantial part of the events or omissions giving rise to the claim

occurred, or a substantial part of the property that is the subject of the action is situated. Under § 1391(b)(3), venue is proper in any judicial district in which any defendant is subject to the court's personal jurisdiction, if there is no district in which an action may otherwise be brought as provided above. "In determining whether the events or omissions are sufficiently substantial to support venue under the amended statute, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (*citing Uffner v. La Reunion Francaise, S.A.*, 224 F.3d 38, 42 (1st Cir. 2001)). Instead, the court looks at "the entire sequence of events underlying the claim." *Id*.

Plaintiff relies on the first clause of § 1391(b)(2), claiming that a "substantial part of the events or omissions giving rise to the claim" occurred in this district. Plaintiff points to the fact all three properties are located in West Virginia (though one is not located in this district), that the anticipated rents would come from West Virginia, and that the foreclosure sales and alleged deficiencies all arose in West Virginia. Defendants argue that the nonpayment of the Notes is the only relevant omission giving rise to this case, and that the failure to pay took place in New York. Defendants' view of the issue is too narrow. The Fourth Circuit's explicit approval of *Uffner* is instructive in resolving this matter. *Uffner* involved a bad faith claim-denial action against an insurer arising out of the sinking of an insured yacht. The First Circuit held that the sinking of the yacht was a "substantial part of the events or omissions giving rise to the claim even though the [bad faith] claim did not concern how, when, or why the accident occurred." *Mitrano*, 377 F.3d at 406 (*citing Uffner*, 244 F.3d at 43)). What was important to the Fourth and First Circuits was that the "sinking of the vessel . . . was the event that allegedly entitled the plaintiff to the payment sought under the contract." *Id*.

8

Even if it were not relevant how, when, or why the foreclosure sales occurred, they all occurred in West Virginia, and two of the three sales took place in this district. Without a doubt, the purchase of the properties and the subsequent the foreclosures are the events that allegedly entitle Plaintiff to the payment sought under the Notes. Venue in this district is proper, and Defendant's Motion to Transfer is **DENIED**.

### C. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Finally, Defendants move to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff's claim for interest at the default rate. The motion raises a purely legal question that requires the Court to look only at the "Default Rate" clause, identical in all three Notes, which reads as follows:

> Holder shall have the option of imposing, and Maker shall pay upon demand, an interest rate ("Default Rate") which is equal to four percent (4%) per annum above the interest rate otherwise payable: (a) while any monetary default exists under this Note or the Loan Documents and is continuing, during that period between the due date and the date of payment; (b) following any Event of Default until the Event of Default is either cured or waived by Holder; (c) after judgment has been rendered on this Note or under any Loan Documents and (d) after the Maturity Date.

*Notes*, ECF No. 1-1. Defendants read this clause to give the Holder the *option* of imposing the default rate by *making a demand* for payment at the higher rate. Plaintiff does not read this clause to require notice before imposing the default rate. Their view is that the default rate is triggered automatically and that only payment is conditioned on a demand. Defendants' reply points to other clauses in the Notes which make ordinary payments due without demand, and argues that the specific inclusion of the words "upon demand" in the Default Rate clause is clear evidence of an intent to require a demand.

A close reading of the first sentence reveals Plaintiff's view to be correct. While Defendants are correct that the sentence confers an option upon the Holder, that option is not

9

conditioned upon any notice. Only payment is conditioned on a demand. If the first clause offset by commas is removed from the sentence, it reads, "Holder shall have the option of imposing . . . an interest rate ("Default Rate") which is equal to four percent (4%) per annum above the interest rate otherwise payable . . . ." The Maker's obligation is to pay that higher rate upon demand, assuming that there has been a default. This construction plainly contemplates that the default rate is triggered by a default, and the Holder can subsequently demand payment at the higher rate.

## CONCLUSION

For these reasons, Defendants' Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Transfer Venue, and For a More Definite Statement, is **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: July 5, 2012

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE