IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

HSBC BANK USA,
NATIONAL ASSOCIATION,

                    Plaintiff,

v.                                         CIVIL ACTION NO. 3:12-cv-00668

RON RESH and
VALERIE REYNOLDS-RESH,

                    Defendants; Counter Claimants;
                    and Third Party Plaintiffs,

v.

REALTY CONCEPTS, LTD; ANDREW
BROSNAC; COLLIERS INTERNATIONAL
VALUATION & ADVISORY SERVICES, LLC;
PHILIP STEFFEN; LAWYER'S TITLE
INSURANCE CORPORATION; and HELEN
SULLIVAN,

                    Third Party Defendants.

**MEMORANDUM OPINION AND ORDER**

      Pending before the Court is the motion by Third Party Defendants Colliers International

Valuation & Advisory Services, LLC ("Colliers") and Philip Steffen to dismiss the Third Party

Complaint (ECF No. 37). Also pending is the motion by Realty Concepts, LTD ("Realty

Concepts") to dismiss the Third Party Complaint (ECF No. 45). For the reasons stated below, the

motion to dismiss by Colliers and Mr. Steffen is **GRANTED in part** (ECF No. 37); specifically,

the Court **DISMISSES** Count II (fraudulent concealment), Count IV (negligent

misrepresentation), Count V (negligence), and Count VII (RICO) as against Colliers and Mr.

Steffen. Realty Concepts' motion to dismiss (ECF No. 45) is **DENIED**.

**Background**

HSBC Bank USA, National Association ("HSBC Bank") commenced the instant litigation by filing a Complaint against Third Party Plaintiffs Ron Resh and Valerie Reynolds-Resh, which sought over $2.6 million in unpaid principal due on three promissory notes executed by Third Party Plaintiffs, as well as interest, costs, fees, and expenses. Third Party Plaintiffs executed these three notes in order to purchase three commercial properties in Beckley, Morgantown, and Huntington, West Virginia, which all contained "Jiffy Lube" franchises.

Third Party Plaintiffs thereafter filed their amended answer, affirmative defenses, and third party complaint collectively as one document. ECF No. 20 ("Third Party Complaint"). Third Party Plaintiffs allege that the appraisals of the three properties, conducted before purchase, fraudulently over-valued the properties. Also, Third Party Plaintiffs were allegedly misled into believing that Peanut Oil, LLC—a "dummy corporation" owned by Samuel Pearson—owned the properties, when in reality they were owned by Adventure 2000. Peanut Oil bought the properties from Adventure 2000, allegedly at a much cheaper price than Third Party Plaintiffs later paid, shortly before Peanut Oil then sold the three properties to Third Party Plaintiffs. Third Party Plaintiffs bought the properties with the understanding that Peanut Oil would fulfill a 15-year lease of the properties. Third Party Plaintiffs purchased the properties on or about April 28, 2006, for approximately $3.65 million, making a collective down payment of a little less than $1 million, and executing the notes for the remainder. Just a few years later, Peanut Oil defaulted on the lease, and in 2008 filed for bankruptcy in the Middle District of Pennsylvania. Because of Peanut Oil's default, Third Party Plaintiffs were unable to fulfill their

obligations to repay the underlying notes.

Third Party Plaintiffs allege that they are the victims of a fraudulent scheme, in which they were induced to purchase the properties based on fraudulent information about the properties' ownership and value, and were led to enter into a lease with a party who had no intentions of fulfilling that lease. This scheme was perpetrated so that the other parties could collect a huge windfall at the expense of Third Party Plaintiffs. Specifically, Third Party Plaintiffs allege:

> Count I: Fraudulent Misrepresentation
> Count II: Fraudulent Concealment
> Count III: Breach of Duty of Good Faith and Fair Dealing
> Count IV: Negligent Misrepresentation
> Count V: Negligence
> Count VI: Unjust Enrichment
> Count VII: Violations of the Racketeer Influenced & Corrupt Organizations Act ("RICO")

Third Party Plaintiffs assert these claims against:[1] HSBC Bank; Andrew Brosnac, who allegedly completed the property sales on behalf of Realty Concepts; Realty Concepts, a real estate firm; Lawyer's Title Insurance Corporation; Helen Sullivan, a former employee of Lawyer's Title Insurance Corporation; Colliers, the successor in interest to PGP Valuation, Inc., the company that completed the appraisals; and Philip Steffen, an employee of PGP Valuation, and later an employee of Colliers.

Colliers and Mr. Steffen filed a motion to dismiss the Third Party Complaint on September 25, 2012, and Realty Concepts filed a motion to dismiss the Third Party Complaint on October 8, 2012. Though the claims in these two motions and the accompanying pleadings do

---

[1] This is a complete list of all Third Party Defendants, but not all claims are brought against each Third Party Defendant.

not overlap completely, there is sufficient commonality to justify addressing both motions in this single Memorandum and Opinion.

Section I addresses the Court's jurisdiction over Realty Concepts. Section II examines whether any of the claims are time-barred. Section III assesses whether the claims that do not sound in fraud survive Rule 12(b)(6) of the Federal Rules of Civil Procedure. Section IV examines whether the fraudulent misrepresentation and fraudulent concealment claims satisfy Rule 9(b). Lastly, Section V addresses Third Party Plaintiffs' RICO claims.

## I. <u>Assessment of the Court's Personal Jurisdiction over Realty Concepts</u>

### A. Standard of Review

Realty Concepts argues that all claims against it must be dismissed because this Court lacks personal jurisdiction over Realty Concepts. At this stage, Third Party Plaintiffs need only make a prima facie showing of jurisdiction, though at later stages they must prove such jurisdiction by a preponderance of the evidence. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). The court, pursuant to a motion to dismiss, need only make a limited inquiry into the facts surrounding the jurisdictional question:

> If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. But when, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge.

*Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) (citation omitted). Additionally, a court's decision that the plaintiff has made a prima facie showing of jurisdiction for purposes of a motion to dismiss does not preclude a court from ultimately finding jurisdiction lacking when ruling at later stages. *Id.* (After finding that a prima facie showing of jurisdiction had been made,

4

noting that "[t]his [showing] does not of course relieve the plaintiffs of the burden ultimately to prove the existence of statutory grounds by a preponderance of evidence, whether in a separate evidentiary hearing adequate to resolve dispositive factual questions, or as an incident to trial on the merits.").

Under Rule 12(b)(2), the plaintiff bears the burden of producing facts supporting the existence of jurisdiction upon a challenge by the defendant. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). The district court may exercise personal jurisdiction over a non-consenting, non-resident defendant if authorized by the long-arm statute of the state in which it sits, and the exercise is consistent with the Due Process Clause of the Fourteenth Amendment. *Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). West Virginia's long-arm statute permits jurisdiction to the extent of the Due Process Clause. *See* W. Va. Code § 56-3-33; *Charter Commc'ns. VI, LLC v. Eleazer*, 398 F. Supp. 2d 502, 505 (S.D. W. Va. 2005). Therefore, the Court must assess whether the exercise of jurisdiction in this case would comport with the applicable constitutional requirements. In other words, "[b]ecause the West Virginia long-arm statute is coextensive with the full reach of due process*, see Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir. 1987), it is unnecessary . . . to go through the normal two-step formula for determining the existence of personal jurisdiction . . . ." *Owens–Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 627–28 (4th Cir. 1997) (citations omitted). "Rather, the statutory inquiry necessarily merges with the Constitutional inquiry." *Id.* Therefore, the Court's inquiry in this case focuses on whether exercising personal jurisdiction over Realty Concepts is consistent with the Due Process Clause of the United States Constitution. To comport with the Due Process

Clause, the plaintiff must show that the non-resident defendant has "minimum contacts" with the forum state and that requiring the defendant to defend in the state "does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Miller v. Mariner Fin., LLC*, No. 3:10-cv-33, 2010 WL 2365400, at *5 (N.D. W. Va. June 8, 2010).

Personal jurisdiction is satisfied here if the Court can exercise either general personal jurisdiction, specific personal jurisdiction, or pendent jurisdiction over the party in question. The Court will first examine whether there is general personal jurisdiction, and next whether there is specific personal jurisdiction. Lastly, the Court will examine pendent jurisdiction.

### B.  General Personal Jurisdiction

General personal jurisdiction arises based on a party's contacts with the forum, where such contacts are unrelated to the underlying lawsuit. The party's contacts with the forum must be "'continuous and systematic,' a more demanding standard than is necessary for establishing specific jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). Realty Concepts is a California corporation, its offices are located in Fresno, California, and it claims to conduct no business activity in West Virginia. Realty Concepts' only alleged connection to West Virginia, based on the Third Party Complaint, is through the property sales underlying this case, carried out by realtor Andrew Brosnac, who allegedly worked for Realty Concepts. Third Party Plaintiffs apparently concede that general personal jurisdiction is lacking, as they do not rebut Realty Concepts' argument that general personal jurisdiction does not exist. Accordingly, this Court finds that Realty Concepts' contacts with West Virginia are insufficient to create general personal jurisdiction.

## C.  Specific Personal Jurisdiction

Specific personal jurisdiction presents an easier threshold to satisfy, and is created based on the nature of the contacts underlying the lawsuit at hand. In deciding whether the contacts establish specific personal jurisdiction, the Court must assess: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan,* 293 F.3d at 712 (quotation marks omitted).  In examining whether the defendant has purposefully availed itself, factors to consider include:

> [W]hether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum.

*Consulting Eng'rs Corp.*, 561 F.3d at 278. These factors should not detract from the focus of the inquiry: "[t]he touchstone of the minimum contacts analysis remains that an out-of-state person have [sic] engaged in some activity purposefully directed toward the forum state . . . ." *In re Celotex Corp.*, 124 F.3d at 629 (quoting *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994)). Additionally, in assessing the constitutional reasonableness of exercising jurisdiction, the court should consider such factors as: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states

in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Consulting Eng'rs Corp.*, 561 F.3d at 279.

Third Party Plaintiffs allege that Mr. Brosnac was an actual or apparent agent of Realty Concepts, and that therefore Mr. Brosnac's actions in West Virginia establish a basis for jurisdiction over Realty Concepts. The parties agree that the existence of an agency relationship under West Virginia law is based on four factors: "(1) Selection and engagement of the servant; (2) Payment of compensation; (3) Power of dismissal; and (4) Power of control. The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative." Syl. Pt. 5, *Burless v. W. Va. Univ. Hosps., Inc.*, 601 S.E.2d 85 (W. Va. 2004). If Mr. Brosnac's actions are not imputed to Realty Concepts, then there is otherwise an insufficient basis for specific personal jurisdiction over Realty Concepts; this is because Realty Concepts' connection to West Virginia is solely through the alleged actions of Mr. Brosnac. Therefore, the determination of whether an agency relationship exists is crucial. Realty Concepts argues that Mr. Brosnac was an independent contractor—not an employee—and that even if an agency relationship existed, Mr. Brosnac acted outside the scope of that relationship, thereby destroying any jurisdiction.

Third Party Plaintiffs have succeeded in making a prima facie showing of jurisdiction. They have clearly and sufficiently alleged actions by Mr. Brosnac, and that Mr. Brosnac was Realty Concepts' employee or agent, such that jurisdiction is satisfied for purposes of this motion to dismiss. Drawing all inferences in the light most favorable to Third Party Plaintiffs, the jurisdictional issues in this case—involving such contested facts as agency and control—should not be decided conclusively against Third Party Plaintiffs at this stage given the limited

showing that they have indeed made. The Court notes that "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition." *Eskridge v. Pac. Cycle, Inc.*, No. 2:11-cv-00615, 2012 WL 1036826, at *7 (S.D. W. Va. Mar. 27, 2012) (quoting *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988)). However, unlike *Eskridge*, here further inquiry into any agency relationship would not constitute a "fishing expedition." Therefore, Third Party Plaintiffs' claims against Realty Concepts will not be dismissed for lack of personal jurisdiction at this point.

### D.  Pendent Jurisdiction

Third Party Plaintiffs claim that even if specific and general personal jurisdiction are lacking, the claims against Realty Concepts can nonetheless proceed because the pending RICO claim creates pendent jurisdiction. *See ESAB Group v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997) (citation omitted) (finding that "when a claim authorized by federal law and by Article III of the Constitution is properly in a federal court, and that claim is so related to a state claim not independently subject to federal jurisdiction that the two may be considered 'one constitutional case,' the federal court has pendent jurisdiction to adjudicate the state claim"); Fed. R. Civ. P. 4(k)(1)(C). Realty Concepts concedes that pendent jurisdiction would be proper if a plausible RICO claim existed, but argues that the RICO claim fails to satisfy federal pleading standards and must be dismissed, thereby destroying pendent jurisdiction. As discussed in Section V, the Court finds that the RICO claim against Realty Concepts survives the motion to

dismiss, and this would provide an independent ground for jurisdiction at this stage, in addition to the grounds for specific personal jurisdiction noted above.

In summary, the Court will not dismiss Third Party Plaintiffs' claims against Realty Concepts at this stage for lack of jurisdiction.

## II.  Analysis of Whether Claims are Time-Barred

### A.  Statutes of Limitation

In this Section, the Court will first assess what statutes of limitation apply to the various claims, and then examine the possible application of tolling. Third Party Plaintiffs' RICO claim is subject to a four-year statute of limitations, as mandated by the Supreme Court. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 146, 156 (1987) (noting that "RICO does not provide an express statute of limitations for actions brought under its civil enforcement provision," and deciding that a four-year statute of limitations applies). Third Party Plaintiffs conceded that their state law claims, specifically torts arising out of negligence, misrepresentation, and professional negligence, are subject to a two-year statute of limitations. Mem. in Opp'n to Colliers & Steffen, at 5, ECF No. 44; *see* W. Va. Code § 55-2-12; *Trafalgar House Constr. v. ZMM, Inc.,* 567 S.E.2d 294, 299 (W. Va. 2002). They argued in a subsequent pleading, however, that contract claims are subject to a five-year statute of limitations, and that their unjust enrichment claim is subject to no statute of limitations. Mem. in Opp'n to Realty Concepts, at 12, ECF No. 49 (citing W. Va. Code § 55-2-6 and *Dunn v. Rockwell*, 689 S.E.2d 255, 273 (W. Va. 2009), respectively).[2]

The Court notes, however, that because the unjust enrichment claim is quasi-contractual, it is in fact subject to a five-year statute of limitations. *See Advantage Energy Mktg., Inc. v. Columbia Gas Transmission Corp.*, No. 2:04-cv-0871, 2009 WL 773273, at *6 (S.D. W. Va. Mar. 17, 2009) (applying five year statute of limitations for quasi-contractual claims under West Virginia Code Section 55-2-6 to unjust enrichment claim); *Stand Energy Corp. v. Columbia Gas Transmission Corp.*, No. 2:04-cv-0867, 2006 WL 162988, at *1 & n.1 (S.D. W. Va. Jan. 20, 2006) (finding that unjust enrichment claim based on implied contract is subject to five-year statute of limitations, and noting that "[t]he parties appear to agree that the claim is based on an implied contract").

The Court does agree that a five-year statute of limitations should apply to the claim for breach of duty of good faith and fair dealing. *See* W. Va. Code § 55-2-6 (stating that claims based on implied contracts must be brought within five years of accrual). Having resolved which statutes of limitation apply to which claims, the Court now turns to the possible application of tolling.

### B.  Tolling of Claims

There are factual disputes about the possible tolling of claims which make it imprudent to decide whether any claims are time-barred at this stage.

Whether Third Party Plaintiffs' claims are time-barred will depend on when they knew or should have known about the underlying injury they allegedly suffered. *See Pocahontas Supreme*

---

[2] Third Party Plaintiffs did not address the statutes of limitation for contracts claims and unjust enrichment in response to Colliers' and Mr. Steffen's motion to dismiss, presumably because neither breach of duty of good faith and fair dealing (the only contracts claim) nor unjust enrichment were alleged against those two defendants.

*Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir. 1987) (discussing the discovery

accrual rule in the context of RICO); *Dunn*, 689 S.E.2d at 262 (quoting *Gaither v. City Hosp.*,

487 S.E.2d 901, 906 (W. Va. 1997)) (explaining that tort claims are tolled under the discovery

rule "until a claimant knows or by reasonable diligence should know of his claim"). This Court is

mindful of the difficulty of deciding, at this stage in the litigation, whether tolling applies:

> [A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6) . . .
> generally cannot reach the merits of an affirmative defense, such as the defense
> that the plaintiff's claim is time-barred. But in the relatively rare circumstances
> where facts sufficient to rule on an affirmative defense are alleged in the
> complaint, the defense may be reached by a motion to dismiss filed under Rule
> 12(b)(6). This principle only applies, however, if all facts necessary to the
> affirmative defense "clearly appear[] on the face of the complaint."

*CSX Transp., Inc. v. Gilkison*, 406 Fed. App'x 723, 728 (4th Cir. 2010) (quoting *Goodman v.*

*Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (citation omitted)). Furthermore, many of the

steps in assessing tolling involve questions of fact, and therefore are within the province of the

jury:

> [A] five-step analysis should be applied to determine whether a cause of action is
> time-barred. First, the court should identify the applicable statute of limitation for
> each cause of action. Second, the court (or, if material questions of fact exist, the
> jury) should identify when the requisite elements of the cause of action occurred.
> Third, the discovery rule should be applied to determine when the statute of
> limitation began to run by determining when the plaintiff knew, or by the exercise
> of reasonable diligence should have known, of the elements of a possible cause of
> action, as set forth in Syllabus Point 4 of Gaither v. City Hosp., Inc., supra.
> Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then
> determine whether the defendant fraudulently concealed facts that prevented the
> plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is
> able to show that the defendant fraudulently concealed facts which prevented the
> plaintiff from discovering or pursuing the potential cause of action, the statute of
> limitation is tolled. And fifth, the court or the jury should determine if the statute
> of limitation period was arrested by some other tolling doctrine. Only the first step
> is purely a question of law; the resolution of steps two through five will generally
> involve questions of material fact that will need to be resolved by the trier of fact.

*Dunn*, 689 S.E.2d at 265.

Colliers and Mr. Steffen argue that claims against them accrued on April 28, 2006—the date on which Third Party Plaintiffs purchased the properties—presumably because by that date Plaintiffs were aware of the existence of appraisals which formed the basis of the purchase price. Therefore, because Third Party Plaintiffs filed their claims in August 2012—more than six years later—the claims against Colliers and Mr. Steffen are allegedly time-barred. Colliers and Mr. Steffen also argue that the discovery rule, which would otherwise toll the claims, is inapplicable because although Third Party Plaintiffs were never given a copy of the appraisals before purchasing the properties, they did not even request to view the appraisals. Therefore, they argue, the Reshes cannot now claim that they could not have reasonably discovered the content of the appraisals before purchasing the properties. Arguably, had Third Party Plaintiffs reviewed the appraisals, they would not be able to invoke the discovery rule, and their claims would be time-barred; Third Party Plaintiffs should not now benefit from waiting so long to review the appraisals. Realty Concepts argues that the claims against it accrued no later than September 2008, when Peanut Oil filed for bankruptcy. Third Party Plaintiffs counter that they did not know of their injury until September 2010, when a related matter was litigated in California, and therefore their claims were tolled until that point; they filed their claims in August 2012, and therefore all of their claims were timely filed.

Based on the authority cited above, the Court will not inquire further into tolling at this point and will not now dismiss any claims as time-barred. This is because all the facts necessary to decide tolling do not clearly appear on the face of the pleadings. More factual information about the nature of the 2008 bankruptcy filing, Peanut Oil's default, and the Reshes' involvement with and knowledge of such matters would be required in making the sort of factual

13

determinations that ultimately bear on whether tolling should apply. *See also Rawls v. Associated Materials, LLC*, No. 1:10-cv-01272, 2011 WL 3297622, at *13 (S.D. W. Va. Aug. 1, 2011) ("Since the court is missing crucial information related to the timing of plaintiffs' discovery of the fraud or misrepresentations, the court finds that a determination of timeliness is best left to a later date, once the facts of the case are better developed."). Also, this Court notes that it has before declined to apply the discovery rule to quasi-contractual unjust enrichment claims. *Stand Energy*, 2006 WL 162988, at *2 n.3 ("[T]he discovery rule does not apply to an unjust enrichment claim that arises from a quasi-contractual case . . . ."); *see also Advantage Energy*, 2009 WL 773273, at *6. However, the parties do not specifically address this point of law on the application of the discovery rule to unjust enrichment claims. With all this in mind, the Court will not at this time rule on the timeliness of the unjust enrichment claim.

Therefore, the Court declines to dismiss any claims as time-barred at this stage.

### III. Application of Rule 12(b)(6) of the Federal Rules of Civil Procedure

#### A. Standard of Review

Third Party Defendants have moved for dismissal of all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual

14

allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Federal Rule of Civil Procedure 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679.  If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to

15

relief.'" *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

## B.  Application

While all claims must satisfy Rule 12(b)(6) in order to proceed, claims sounding in fraud must additionally satisfy the higher pleading hurdle presented by Rule 9(b). Only the claims that do not sound in fraud will be discussed in this section, specifically: Count III- breach of duty of good faith and fair dealing; Count IV- negligent misrepresentation; Count V- negligence; and Count VI- unjust enrichment. The claims that sound in fraud will be discussed in Sections IV and V because, even assuming those fraud claims satisfy Rule 12(b)(6), they must additionally satisfy Rule 9(b) in order to proceed.

### 1.  Count III-Breach of Duty of Good Faith and Fair Dealing

Count III alleges breach of duty of good faith and fair dealing against Realty Concepts, but not against Colliers and Mr. Steffen. Realty Concepts argues that this claim should be dismissed because West Virginia does not recognize an independent claim for breach of the duty of good faith and fair dealing. *Stand Energy Corp. v. Columbia Gas Transmission Corp.*, 373 F. Supp. 2d 631, 644 (S.D. W. Va. 2005); *see also Powell v. Bank of Am., N.A.*, 842 F. Supp. 2d 966, 982 (S.D. W. Va. 2012) (stating that "West Virginia recognizes no such claim [for failure to exercise contractual discretion in good faith], and claims for breach of the implied covenant must be predicated on a breach of contract."). Realty Concepts argues that Count III should be

16

dismissed because this claim was not brought as a claim for breach of contract, and because there is no underlying contract between Realty Concepts and Third Party Plaintiffs.

Third Party Plaintiffs concede that there is no independent cause of action for breach of the duty of good faith and fair dealing, but nonetheless argue that this Count survives because the claim "should be interpreted as stating an independent basis of recovery on the contract." ECF No. 49, at 13. Third Party Plaintiffs point to *Highmark W. Va., Inc. v. Jamie*, 655 S.E.2d 509 (W. Va. 2007), which acknowledged that although "an implied covenant of good faith and fair dealing does not provide a cause of action apart from a breach of contract claim," the cause of action at issue in that particular case would nonetheless be interpreted as a breach of contract claim. *Id.* at 514 ("[T]he allegations of Count 3 [breach of the covenant of good faith and fair dealing] construed in the light favorable to the appellant demonstrate that, while inartfully drafted as a claim upon an implied covenant, Count 3 is, in reality, a breach of contract claim covering matters not identical to those specified in Counts 1 [breach of contract] and 2 [retroactive denial of payments in violation of statutory law]."). Because Third Party Plaintiffs have sufficiently alleged a contractual relationship with Realty Concepts, through the alleged actions of Mr. Brosnac, which could form the underlying basis of this claim, the Court will allow Count III to proceed.

    2.  Count IV- Negligent Misrepresentation

Count IV alleges that Colliers, Mr. Steffen, and Realty Concepts engaged in negligent misrepresentation. In West Virginia, a claim for negligent misrepresentation must allege that the defendant: 1) owed a duty to provide the plaintiff with information; 2) made an erroneous statement when in fact the defendant had no knowledge about the subject, and 3) thereby misled

the plaintiff, causing the plaintiff's injury. *Folio v. City of Clarksburg*, 655 S.E.2d 143, 151 (W. Va. 2007) (quoting Syl. Pt. 1, *James v. Piggott*, 74 S.E. 667 (W. Va. 1910)). Liability can attach when the defendant makes an erroneous statement "(1) with actual knowledge of its falsity; (2) without knowledge either of its truth or falsity; or (3) under circumstances in which the person making it ought to have known if he did not know of its falsity." *Id.* at 151 (quoting *Horton v. Tyree,* 139 S.E. 737, 738 (W. Va. 1927)).

As explained above, it is plausible that Realty Concepts may have owed Third Party Plaintiffs a duty, based on the alleged relationship between Realty Concepts, Mr. Brosnac, and Third Party Plaintiffs, thus meeting the first prong. Third Party Plaintiffs allege that Mr. Brosnac "assisted and facilitated" Mr. Pearson's misrepresentations about Peanut Oil's plans and ownership of the properties, which satisfies the second prong. Third Party Compl. ¶ 74. The Third Party Complaint also sufficiently alleges that Third Party Plaintiffs were misled and relied on those misrepresentations, thereby meeting prong three. Therefore, Count IV will not be dismissed at to Realty Concepts.

Now the Court turns to the negligent misrepresentation claim again Colliers and Mr. Steffen. Third Party Plaintiffs claim that "PGP Valuation, Inc. and Philip Steffen held a duty to fairly and accurately value the properties at issue, and to fully investigate the facts on which their appraisals were based." Third Party Compl. ¶ 163. Third Party Plaintiffs state that the basis for this duty comes from *First Nat'l Bank v. Crawford*, 386 S.E.2d 310 (W. Va. 1989), where plaintiff bank sued defendant accountant for professional negligence regarding the accountant's preparation of a financial statement for a construction company, a statement on which the bank relied in making a loan. The Supreme Court of Appeals held that lack of privity between a bank

18

and an accountant was not an absolute defense to the suit. This Court notes, however, that the Supreme Court of Appeals was responding to the "narrow issue" of accounting malpractice. Also, the bank in *Crawford* had explicitly told the accountant that, before closing on the loan, the bank needed to view the financial statement. The *Crawford* court adopted the rule stated in Restatement (Second) of Torts (1977) Section 552, titled "Information Negligently Supplied for the Guidance of Others," noting that "it imposes a standard of care only to known users who will actually be relying on the information provided by the accountant." *Crawford*, 386 S.E.2d at 313. That court explicitly decided not to follow an alternative approach where a duty exists toward reasonably foreseeable users of the information. *Id.* at 312.

The Supreme Court of Appeals has subsequently declined to hold that appraisers have a duty to individuals other than those with whom the appraiser contracts. *See Eblin v. Coldwell Banker Residential Affiliates, Inc.*, 455 S.E.2d 774, 779 (W. Va. 1995) (declining to find that appraiser had duty to homebuyer when structural problems were discovered after purchase, where the appraiser was employed by the mortgage lender, gave the appraisal report to the lender, and the report did not cover structural integrity). In the instant case, Colliers and Mr. Steffen were employed by BLX Capital (the original note holder) *only*, and the appraisals are exclusively for use by that client. *See, e.g.,* Huntington Appraisal, at 2 ("Reliance on this report by anyone other than the client for a purpose not set forth above is prohibited. The author's responsibility is limited to the client."). Third Party Plaintiffs fail to point to any Fourth Circuit cases specifically finding that appraisers owe a duty to individuals known to be relying on appraisal reports, and this Court has not found any. Therefore, this Court finds that Colliers and

Mr. Steffen did not owe the Reshes a duty. Because there was no duty, prong one is not satisfied, and therefore the Court dismisses Count IV as to Colliers and Mr. Steffen.[3]

In summary, Count IV survives against Realty Concepts, but is dismissed against Colliers and Mr. Steffen.

### 3. Count V- Negligence

To state a claim for negligence, the plaintiff must allege the existence of a duty, the defendant's breach of that duty, causation, and damages. Third Party Defendants argue that Third Party Plaintiffs have not sufficiently alleged all four elements of the negligence claim, and therefore that cause of action must be dismissed. Because, as noted in the previous section, Colliers and Mr. Steffen did not owe a duty to Third Party Plaintiffs, the Court dismisses the negligence claim against Colliers and Mr. Steffen.

Next, the Court will assess the negligence claim against Realty Concepts. Realty Concepts was the alleged employer of Andrew Brosnac, Third Party Plaintiffs' realtor. Realty Concepts claims it had no duty to Third Party Plaintiffs, it did not breach any duty that existed, and it did not proximately cause any damage that Third Party Plaintiffs experienced. Third Party Plaintiffs state that "Andrew Brosnac and Realty Concepts, Ltd. held a duty to fairly represent and protect the interests of their client, Defendants, and to ensure that any deal they arranged on

---

[3] This claim must be dismissed for failure to satisfy prong one, even though prongs two and three have been satisfied. Third Party Plaintiffs have sufficiently pled prong two by casting doubt on: the truthfulness and thoroughness of the appraisals; the methodology by which the properties were valued; the reasonableness of assuming the 15 year leases would be completed; and the allegedly weak inquiry into the prices of the first leg of the double-escrow transaction. It would be too early for the Court to decide that the appraisals definitively did not constitute erroneous statements. Additionally, Third Party Plaintiffs have sufficiently pled reliance, the third prong. Third Party Plaintiffs completed the purchases based on the appraisal results, regardless of whether or not they actually read the appraisals.

behalf of Defendants was objectively fair and reasonable and to warn Defendants of any risks or questionable practices occurring in relation to Defendants' acquisition of the properties," and also that "Realty Concepts held the further duty of monitoring the activities of its employee, Andrew Brosnac." Third Party Compl. ¶¶ 164-65. It is unclear at this stage whether Mr. Brosnac was indeed an employee of Realty Concepts, and therefore whether Realty Concepts had any duty to monitor him, or what the scope of any such duty was. It also is unclear if the Reshes were actually Realty Concepts' clients. However, as previously explained, the Court will not now decide if a duty was owed, so that further factual development on this issue can occur.

Third Party Plaintiffs sufficiently alleged breach of the duty. The Third Party Complaint states that "Realty Concepts and Andrew Brosnac breached their duty by failing to alert Defendants to the faulty bases for the appraisals, and the fact that there existed a gross disparity in the purchase prices of the two legs of the double-escrow transactions." *Id.* ¶ 169. They also allege that Realty Concepts breached its duty to monitor Brosnac. *Id.* ¶ 170. Third Party Plaintiffs plead that Mr. Brosnac was part of Mr. Pearson's scheme to defraud the Reshes, in that he "assisted and facilitated" Mr. Pearson's misrepresentations about Peanut Oil. *Id.* ¶ 74. The Third Party Complaint also sufficiently alleges causation and damages. Therefore, the negligence claim against Realty Concepts satisfies Rule 12(b)(6). However, the negligence claim against Colliers and Mr. Steffen is dismissed.

### 3. Count VI- Unjust Enrichment

Count VI alleges that Realty Concepts received unjust enrichment. The elements of an unjust enrichment claim are: "(1) a benefit conferred upon the [defendant], (2) an appreciation or knowledge by the defendant of such benefit, and (3) the acceptance or retention by the defendant

21

of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Veolia Es Special Servs., Inc. v. Techsol Chem. Co.*, No. 3:07-cv-0153, 2007 WL 4255280, at * 9 (S.D. W. Va. Nov. 30, 2007) (citing 26 WILLISTON ON CONTRACTS § 68:5 (4th ed.)). West Virginia specifically requires that the benefits were "received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor." *Realmark Devs., Inc. v. Ranson*, 542 S.E.2d 880, 884-85 (W. Va. 2000) (citing *Copley v. Mingo County Bd. of Educ.*, 466 S.E.2d 139 (W. Va. 1995)). Third Party Plaintiffs allege that Realty Concepts, as their real estate broker firm, received fees for the real estate transactions which were based on fraud and misrepresentations to Realty Concepts' client, the Reshes. Therefore, Third Party Plaintiffs have sufficiently alleged all three prongs of the unjust enrichment claim, and that claim will not be dismissed.

## IV. Analysis of Fraudulent Misrepresentation and Fraudulent Concealment Claims Under Rule 9(b)

### A.  Standard of Review

Federal Rule of Civil Procedure 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This Court will analyze Count I (fraudulent misrepresentation) and Count II (fraudulent concealment) under this heightened pleading standard. Under the heightened pleading standard of Rule 9(b), a plaintiff is required to "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Wilson v. Kellogg, Brown & Root, Inc*., 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999)) (internal quotation marks omitted). In other words, the plaintiffs must describe the "'who, what, when,

where, and how' of the alleged fraud." *Id.* (quoting *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)).

Furthermore, "in the ordinary case when the claimant has adequate access to the necessary facts, the claimant may not plead fraud on information and belief nor in a vague manner." *Id.* When several defendants are party to the fraud claims, the plaintiff "usually may not group all wrongdoers together in a single set of allegations. Rather, the claimant is required to make specific and separate allegations against each defendant." *Id.* Despite all these considerations, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *United States v. Gwinn*, No. 5:06-cv-00267, 2008 WL 867927, at *10 (S.D. W. Va. Mar. 31, 2008).

## B.  Application

### 1.  Count I- Fraudulent Misrepresentation

Count I alleges fraudulent misrepresentation by Realty Concepts, Colliers, and Mr. Steffen. To succeed on a claim for fraud, the plaintiff must prove the following elements: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." Syl. Pt. 1, *Lengyel v. Lint*, 280 S.E.2d 66, 67 (W. Va. 1981) (quoting *Horton v. Tyree*, 139 S.E. 737 (W. Va. 1927)).

In regard to the fraudulent misrepresentation allegations against Colliers and Mr. Steffen, Third Party Plaintiffs contend that the appraisals themselves were the fraudulent

23

misrepresentations, regardless of the fact that the appraisals clearly state the assumptions underlying the valuations. Third Party Plaintiffs do claim that the appraisals were false, were material, and that they relied on the values in the appraisals, even if they never saw the actual appraisal reports. This suffices under Rule 9(b), and therefore Count I survives as to Colliers and Mr. Steffen.

Moving on to Realty Concepts, the Third Party Complaint alleges that Realty Concepts was "aware of, acknowledged, and ratified [its] employees' actions, or, alternatively, failed to sufficiently monitor the activities of [its] employees." ¶ 118. The strength of this argument ultimately depends on 1) whether Andrew Brosnac is liable for fraudulent misrepresentation, and if so, 2) whether Realty Concepts is liable for Mr. Brosnac's misconduct. In essence, Realty Concepts is not accused of directly engaging in fraudulent misrepresentation. Third Party Plaintiffs allege that Mr. Brosnac "assisted and facilitated" Mr. Pearson's misrepresentation about Peanut Oil, *id.* ¶¶ 73-74, and that they relied on those misrepresentations to their detriment. The "who, what, when, where, and how" of the fraudulent misrepresentations has been sufficiently alleged, and therefore Count I survives as against Realty Concepts.

2. <u>Count II- Fraudulent Concealment</u>

Count II alleges fraudulent concealment by Realty Concepts, Colliers, and Mr. Steffen. A claim of fraudulent concealment requires "concealment of facts by one with knowledge, or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." *Roney v. Gencorp*, 431 F. Supp. 2d 622, 637 (S.D. W. Va. 2006) (quoting *Livingston v. K–Mart Corp.*, 32 F. Supp. 2d 369, 374 (S.D. W. Va. 1998)). As noted above, Colliers and Mr. Steffen

had no duty toward Third Party Plaintiffs, and this failure alone mandates dismissal of this claim against Colliers and Mr. Steffen.

Third Party Plaintiffs' pleading of fraudulent concealment against Realty Concepts satisfies Rule 9(b). As mentioned earlier, the Court at this point declines to decide whether or not Mr. Brosnac was an agent of Realty Concepts, and therefore whether Realty Concepts owed a duty to Third Party Defendants; duty has been sufficiently alleged at this stage. The Third Party Complaint points out that "the Third Party Defendants knew or should have known that the prices Defendants were paying for these properties were far in excess of their actual values" and "the Third Party Defendants knew or should have known that the appraisals upon which the prices for all three transactions were largely premised were based on faulty methodologies, insufficient and unreliable data, and the prospective tenants and other aspects of the appraisals were not properly investigated." ¶¶ 129-30. The Third Party Complaint also alleges intent. ¶ 135 ("BLX Capital and the Third Party Defendants failed to disclose these facts to Defendants intentionally"). Realty Concepts has sufficiently been put on notice of the nature of the alleged concealments, who concealed them, and when. In summary, Count II is dismissed against Colliers and Mr. Steffen, and survives against Realty Concepts.

## V.    Analysis of RICO Claims

Count VII alleges that Realty Concepts and Colliers, among other Third Party Defendants but excluding Mr. Steffen,[4] engaged in violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1961, *et. seq*. RICO makes it "unlawful for any person

---

[4] Although it is unclear if the omission of Mr. Steffen from this claim was an oversight, even if Mr. Steffen were accused of RICO violations, that would not substantially change the Court's analysis.

employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity," § 1962(c). The Supreme Court has clarified that "[i]n order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs" *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). Specifically, that individual "must participate in the operation or management of the enterprise itself." *Id.* at 185. A pattern of racketeering activity is defined as "at least two acts of racketeering activity," § 1961(5), and racketeering activity includes mail fraud and wire fraud, § 1961(1), which Third Party Plaintiffs allege occurred here. The elements of mail fraud and wire fraud are: "(1) the existence of a scheme to defraud and (2) the use of the mails or wire communication in furtherance of the scheme." *United States v. Curry*, 461 F.3d 452, 457 (4th Cir. 2006). Also, Third Party Plaintiffs concede that because they are alleging fraud, the RICO allegations must satisfy Rule 9(b).

Colliers claims that PGP Valuation lacked the requisite amount of control over the alleged enterprise, and that for this reason the RICO claim against Colliers must be dismissed. *See First Cent. Sav. Bank v. Meridian Residential Capital*, No. 09-cv-3444, 2011 WL 838910 (E.D.N.Y. Mar. 3, 2011) (dismissing RICO claim against appraisal company alleged to have over-appraised the value of properties, where there were no facts showing that the appraisal company had control over the alleged enterprise); *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829 (S.D. Ind. 2005) (dismissing RICO claims against appraisers because their participation in alleged overvaluing of properties did not satisfy the *Reves* operation and management test); *see also Reves*, 507 U.S. at 186. Third Party Plaintiffs cite no cases supporting

26

their contention that Colliers held the requisite level of control in this alleged enterprise. In fact, Third Party Plaintiffs themselves concede that "[t]he core of the enterprise consisted of Brosnac, Pearson, and Sullivan, who enlisted and obtained Appraisers' support." ECF No. 44 at 18. While this statement is not fatal to the RICO claim on its own, it does nothing to bolster the claim that Colliers exerted the requisite amount of control, rather than merely providing support to any enterprise. Therefore, the RICO claim is dismissed as to Colliers. This lack of control is sufficient grounds for dismissing the RICO claims against Colliers, and therefore the Court need not reach the issue of particularity under Rule 9(b). In light of the above, Count VII is dismissed against Colliers.

Turning attention now to Realty Concepts, Third Party Plaintiffs have in no way shown that Realty Concepts had any control over the alleged enterprise, or managed and directed the operations of that enterprise. Realty Concepts' only connection to the enterprise appears to be through the actions of Mr. Brosnac, who is alleged to be a "core" enterprise member, having cooperated with Pearson to misrepresent Peanut Oil's activities to the Reshes in order to induce them to buy the properties. Just as with the fraud claims above, Realty Concepts' liability would only exist, it seems at this point, if Mr. Brosnac is liable for RICO violations, and Realty Concepts was indirectly found liable as Mr. Brosnac's employer. The Third Party Complaint sufficiently alleges Mr. Brosnac's actions in using the mails and interstate wires as part of a scheme where Peanut Oil purchased properties shortly before selling them to the Reshes, concealing the overinflated value of the properties in the process. ¶¶ 192, 196. Therefore, the RICO claim against Realty Concepts may proceed.

**Conclusion**

For the reasons stated above, the motion to dismiss by Colliers and Mr. Steffen is

**GRANTED in part** (ECF No. 37); specifically, the Court **DISMISSES** Count II (fraudulent

concealment), Count IV (negligent misrepresentation), Count V (negligence), and Count VII

(RICO) as against Colliers and Mr. Steffen. Additionally, Realty Concepts' motion to dismiss

(ECF No. 45) is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to

counsel of record and any unrepresented parties.

ENTER:          January 25, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE

28