IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

HSBC BANK USA,
NATIONAL ASSOCIATION,

          Plaintiff,

v.                                      CIVIL ACTION NO. 3:12-cv-00668

RON RESH and
VALARIE REYNOLDS-RESH,

          Defendants; Counter Claimants;
          and Third Party Plaintiffs,

v.

REALTY CONCEPTS, LTD; ANDREW
BROSNAC; COLLIERS INTERNATIONAL
VALUATION & ADVISORY SERVICES, LLC;
PHILIP STEFFEN; LAWYER'S TITLE
INSURANCE CORPORATION; and HELEN
SULLIVAN,

          Third Party Defendants.

**MEMORANDUM OPINION AND ORDER**

     Pending before the Court is a motion (ECF No. 219) by Third Party Defendant Lawyer's Title Insurance Corporation ("Lawyer's Title") to amend its answer to the Third Party Complaint. Also pending is a motion (ECF No. 237) by Third Party Plaintiffs Ron Resh and Valarie Reynolds-Resh ("the Reshes") to strike the Supplement filed by Lawyer's Title. For the reasons explained below, the Motion to Amend (ECF No. 219) is **GRANTED** and the Motion to

1

Strike (ECF No. 237) is **DENIED**. The Court accordingly **DIRECTS** Lawyer's Title to file its Amended Answer within 14 days of the entry of this Memorandum Opinion and Order.

## I.  Statement of Facts

HSBC Bank USA, National Association ("HSBC Bank"), commenced the instant litigation by filing a Complaint against the Reshes, seeking over $2.6 million in unpaid principal due on three promissory notes executed by the Reshes, as well as interest, costs, fees, and expenses. The Reshes executed the notes in order to purchase three commercial properties containing "Jiffy Lube" franchises.

The Reshes subsequently filed an amended answer, affirmative defenses, and third party complaint collectively as one document, alleging that property appraisals conducted before the purchase fraudulently over-valued the properties. Third Party Compl., ECF No. 20. The Third Party Complaint asserts claims against Lawyer's Title, in addition to other parties. Lawyer's Title filed its Answer on September 20, 2012. ECF No. 36.

Third Party Defendants Colliers International Valuation & Advisory Services, LLC ("Colliers"), and Philip Steffen filed their own respective Answers on February 15, 2013, following resolution of a motion to dismiss. ECF Nos. 122, 123. They thereafter filed a Motion to Amend their respective Answers on July 30, 2013, for the following reason:

> [Colliers and Mr. Steffen move to amend] in order to assert the Affirmative Defenses of accord and satisfaction, payment and release and to assert Counterclaims against Ron Resh and Valarie Reynolds-Resh, individually and in their capacities as Trustees, for breach of a settlement agreement (breach of contract) and for breach of the duty of good faith and fair dealing implied in all contracts.

ECF No. 193 at 2. In support of their motion, Colliers and Mr. Steffen stated that, in December 2010, the Reshes signed a Settlement Agreement and Mutual Release with PGP Valuation,

2

Inc.—the predecessor in interest to Colliers—, but that Colliers and Mr. Steffen did not learn about that Release until on or about June 18, 2013, in the midst of discovery. The Release was completed in the course of a civil action filed by the Reshes in the Court of Common Pleas in Medina County, Ohio. The Reshes opposed the Motion to Amend. This Court found that amendment satisfied the standards in Rules 15(a)(2) and 16(b) of the Federal Rules of Civil Procedure and accordingly granted the motion to amend. Mem. Op. & Order, ECF No. 215.

Two days after the Court granted that Motion to Amend, Lawyer's Title filed the pending Motion to Amend, requesting leave to amend in order to assert the following:

> Lawyer's Title files this Motion for Leave to Amend their Affirmative Defenses in this matter so as to assert the affirmative defenses of accord and satisfaction, payment and release and to assert counterclaims against Ron Resh and Valarie Reynolds[-]Resh, individually and in their capacities as trustees, for breach of a settlement agreement (breach of contract) and for the breach of their duties of good faith and fair dealing that is implied in all contracts.

Mot. Amend ¶ 1, ECF No. 219. In support of its motion, Lawyer's Title asserts that the Reshes signed a Settlement and Release Agreement ("Release Agreement") on January 11, 2011, in which the Reshes allegedly released all claims against Lawyer's Title. The Release Agreement was filed as an exhibit to the motion. The Reshes filed a Response in Opposition to the Motion to Amend, arguing that the amendment would be futile and that the motion is untimely. Lawyer's Title then filed a Reply and separate "Supplement." The Reshes filed a Motion to Strike the Supplement, and Lawyer's Title filed a Response in Opposition to the Motion to Strike. These two motions are now ripe for resolution.

In Section II, the Court will discuss the propriety of the Supplement filed by Lawyer's Title. Section III discusses the legal standard applicable to the Motion to Amend. In Section IV, the Court applies that standard to the facts of this case.

## II. Supplemental Filing

On October 3, 2012, Lawyer's Title filed its Reply in Support of its Motion to Amend, in which it is discussed inconsistencies between Ms. Reynolds-Resh's affidavit—submitted by the Reshes—and her deposition testimony. ECF No. 234. A few weeks later—on October 21, 2013—, Lawyer's Title filed a so-titled "Supplement," which explained that Lawyer's Title did not have the deposition transcript when the Reply was filed, but that the transcript was now available. ECF No. 234. Lawyer's Title attached portions of the transcript as an exhibit to the Supplement.

The Reshes filed a Motion to Strike the Supplement, pointing out that Lawyer's Title did not first seek leave of Court before filing the Supplement, which allegedly violates the Local Rules of Civil Procedure. ECF No. 237. Local Rule of Civil Procedure 7.1(a)(7) states in pertinent part that "[s]urreply memoranda shall not be filed except by leave of court." The Reshes argue that the filing is repetitive and will cause confusion. Lawyer's Title responds that its filing is a supplement—not a surreply—and that the supplement does not add new argument but rather merely supports already-asserted arguments. ECF No. 240. Lawyer's Title also asserts that the filing does not cause confusion.

Neither party cites any authority other than the rule itself. The Court will treat the Supplement as it would treat a "notice of additional authority," because the Supplement merely adds newly-released authority that was not available when the earlier pleadings were filed. The Reply referenced the transcript, which was simply unavailable at the time the Reply was filed. Therefore, the Supplement will be considered by the Court, and the Motion to Strike is denied.

### III. Legal Standard for Motion to Amend

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, after the time to amend as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Rule 16(b)(4) states that a scheduling order "may be modified only for good cause and with the judge's consent." As this Court explained in *Stewart v. Coyne Textile Services*, "a motion to amend . . . filed after the deadline established in the scheduling order, must satisfy the tests of both Rule 16(b) and Rule 15(a)" in order to be granted. 212 F.R.D. 494, 496 (S.D. W. Va. 2003).

As the Supreme Court has explained in discussing Rule 15(a), "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). In contrast, Rule 16(b)'s "good cause" standard focuses on the diligence of the moving party. *Stewart*, 212 F.R.D. at 496-97 (citing *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D. W. Va. 1995)). Rule 16(b) provides a higher hurdle for movants, and the Fourth Circuit affirms that this higher standard applies when the deadline to amend has expired. *Branch Banking & Trust Co. v. First Am. Title Ins. Co.*, No. 5:11-CV-00473, 2013 WL 85342, at *2 (S.D. W. Va. Jan. 7, 2013) (citing *Nourison Rug Corp. v. Parvizian,* 535 F.3d 295, 298 (4th Cir. 2008), among other cases). Again, "Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the

5

diligence of the moving party." *Id.* at \*2 (quoting *Montgomery v. Anne Arundel Cnty.,* 182 Fed. App'x 156, 162 (4th Cir. 2006) (per curiam)).

### IV. Application

First, the Court clarifies that both Rule 15(a)(2)'s standard *and* Rule 16(b)'s "good cause" standard apply in the instant case. Although the most recent scheduling order does not include a deadline for amending pleadings, an earlier scheduling order *did* establish a September 19, 2012, deadline for amending pleadings. ECF No. 21 ¶ 1. Subsequent amended scheduling orders were filed after that deadline passed and so it was not necessary for those orders to discuss a deadline for amendment. ECF Nos. 67, 176, 226. Therefore, just as with the earlier Memorandum Opinion and Order granting amendment, the Court will apply Rule 16(b)'s "good cause" standard here in addition to Rule 15(a)(2)'s standard.

This is the first amendment sought by Lawyer's Title. The Reshes do not argue that Lawyer's Title acted in bad faith, but rather argue that Lawyer's Title did not act with due diligence in seeking amendment. By the time Lawyer's Title sought leave to amend, nearly a year had passed since Lawyer's Title filed its original answer *and* since the deadline for amendment expired. Lawyer's Title claims that when Colliers and Mr. Steffen filed their own motion for leave to amend based on their own Release, counsel for Lawyer's Title was then prompted to investigate that same Ohio civil case that gave rise to Collier's Release. As counsel for Lawyer's Title represents, "It was then discovered that Lawyer's Title was a party to that litigation and after recovering the docket in that case learned that Lawyer[']s Title and the Reshes entered into a settlement." Mot. Amend ¶ 9. After the Release Agreement between the Reshes and Lawyer's Title was located, counsel for Lawyer's Title sent an email to counsel for

the Reshes, providing a copy of the Agreement. Email from John Burns to Shawn Lau (Sept. 4, 2013), Ex. B, Mot. Amend. A week later—and one day after this Court granted Colliers's and Mr. Steffen's Motion to Amend—counsel for Lawyer's Title requested that counsel for the Reshes provide consent for Lawyer's Title to amend its Answer. Email from John Burns to Shawn Lau (Sept. 11, 2013), Ex. C, Mot. Amend. Counsel for the Reshes were given until the end of that business day to respond. *Id.* Counsel for the Reshes did not respond and counsel for Lawyer's Title filed the Motion for Leave to Amend the next day.

The Reshes attempt to distinguish the present situation from Colliers's and Mr. Steffen's motion to amend by arguing that Colliers and Mr. Steffen were third-party intended beneficiaries to that particular release agreement, which is why Colliers and Mr. Steffen allegedly did not discover the agreement sooner. In contrast, Lawyer's Title was a direct party to its own Release Agreement, and therefore Lawyer's Title cannot claim it did not know about that Release Agreement.

In their Response opposing amendment, the Reshes cite at length from *Georgia Pacific Consumer Products, LP v. Von Drehle Corporation*, 710 F.3d 527, 536 (4th Cir. 2013), which they also cited in opposition to the earlier Motion to Amend. In *Georgia Pacific*, the defendant von Drehle Corporation moved to amend its answer in November 2010 to assert the affirmative defenses of issue and claim preclusion, based on a judgment entered in a separate case in July 2009. The district court denied the motion to amend as untimely and because it would prejudice the nonmoving party. After a trial which resulted in a verdict against von Drehle, von Drehle filed a motion again asking to be able to assert the affirmative defenses of claim and issue preclusion. This time, the district court allowed von Drehle to assert these affirmative defenses; it

7

then vacated the trial judgment and entered judgment as a matter of law for von Drehle because of this preclusion. The Fourth Circuit found that the district court's decision to vacate was in error partly because "von Drehle waived the preclusion defenses by failing to assert them in a timely manner." *Id.* at 529.

This Court finds the situation from *Georgia Pacific* distinguishable from the instant case. First, "von Drehle's trial counsel in the present matter attended the . . . bench trial [in another case], and immediately thereafter was made aware of the Arkansas court's [July 2009] judgment [in that other case]." *Id.* at 531. Therefore, von Drehl had knowledge of that July 2009 judgment when it happened, and yet for whatever reason did not file a motion to amend based on that judgment until over a year later. Here, however, present counsel for Lawyer's Title did not represent Lawyer's Title in the earlier Ohio litigation that resulted in the Release Agreement, although Lawyer's Title was a direct party to the Agreement. In their response to Lawyer's Title's first request for production of documents, the Reshes provided a list of 15 cases involving the Reshes. Ex. A, ECF No. 230. The Ohio litigation resulting in the Release Agreement was not on that list. Lawyer's Title requested that the Reshes provide copies of all civil actions filed by the Reshes involving any of the defendants in this case. The Reshes replied that the request was "overbroad" because the Reshes had "been involved in numerous cases" and those cases were all matters of public record. *Id.* at 3, 4. The Reshes pointed to the list of cases but cautioned that the list of 15 cases was "not an all[-]inclusive list." *Id.* at 4.

Lawyer's Title began investigating the Ohio litigation after Colliers and Mr. Steffen filed their Motion to Amend on July 30, 2013. It took some time—although it is not clear exactly how much—to find the Release Agreement, which was "eventually located" and provided to counsel

8

for the Reshes in early September 2013. Mot. Amend ¶¶ 11, 12. Lawyer's Title emailed counsel for the Reshes to request consent to amend the day after this Court's ruling granting the earlier motion to amend, and then counsel filed the motion to amend the day after that. Although one could argue that Lawyer's Title should have filed its motion to amend before the earlier motion was resolved, its decision makes sense as an effort to avoid potential judicial inefficiency that could result from filing before knowing how the Court would rule. Additionally, the Reshes may simply have consented to amendment in light of the Court's recent ruling. Given the timeline of events, the Court finds that Lawyer's Title raised the issue of amendment within a reasonable period. *Compare with Georgia Pac.,* 710 F.3d at 534 (noting that "von Drehle did not raise its preclusion defenses 'at the first reasonable opportunity,' much less at the 'earliest possible moment[]'" (citations omitted)). The Court is satisfied that Lawyer's Title acted in good faith and with due diligence, seeking amendment at the soonest opportunity possible.

The Reshes argue that they will be prejudiced if this amendment is granted, pointing out that they have already engaged in discovery and have taken many depositions. Furthermore, they state that the amendment will involve new issues not previously covered in the parties' earlier discovery efforts. The Court acknowledges that discovery has proceeded to a greater degree than when the earlier Motion to Amend was granted. However, since the time that the Court's earlier Memorandum Opinion and Order granting leave to amend was granted, a Third Amended Scheduling Order has been entered in this case. ECF No. 226. Pursuant to that scheduling order, all discovery requests must be completed by April 11, 2014, and all depositions must be completed by May 28, 2014. In contrast, though, the first motion to amend in *Georgia Pacific* was made well over a year after the district court decided cross-motions for summary judgment,

9

at a time when the "matter [was] finally ready for trial." 710 F.3d at 531 (quoting the district court's March 2011 order denying the first motion to amend). The post-trial motion to amend in *Georgia Pacific* clearly occurred after discovery was long completed. *See also In re Waddell Jenmar Sec., Inc.*, No. 92-2158, 1993 WL 128018, *2 (4th Cir. Apr. 23, 1993) (affirming bankruptcy court's denial of motion to amend where "no explanation had been offered as to why the seventh defense had not been earlier asserted and why it now arose more than three years *after* the fraud of Waddell was known to [the party seeking amendment], *eighteen months* after [the party seeking amendment] had filed the original answer, after all discovery had been closed, and only seven days before the docketed hearing on summary judgment was to be heard." (emphasis in original)). Although significant discovery has already occurred and although some depositions have already taken place, given the limited nature of additional issues that would be added as a result of amendment and the many months left for discovery to be completed, the parties will have ample opportunity to engage in discovery pertaining to the Release Agreement. Therefore, the Court finds that amendment in this situation will not cause prejudice.

The Reshes also suggest that the amendment is futile because the Release Agreement is limited in scope to the property and title policy that was the subject of the underlying Ohio litigation. This is similar to their argument regarding the Release with Colliers. As noted in the earlier Memorandum Opinion and Order, this district has held that a proposed amendment is futile if it is "unable to survive a motion for summary judgment." *Adkins v. Labor Ready, Inc.*, 205 F.R.D. 460, 462 (S.D. W. Va. 2001) (citations omitted). Another district in this circuit has held that an amendment is futile if it does not survive Rule 12(b)(6), which is a less onerous

10

standard. *Schieszler v. Ferrum Coll.*, 233 F. Supp. 2d 796, 805 (W.D. Va. 2002). The Release Agreement here states in pertinent part as follows:

> [Plaintiffs] hereby fully lease Lawyer[']s Title Insurance Corporation NKA Fidelity National Title Insurance Company . . . from any and all liability, actions, causes of action, claims and demands, direct or indirect, *including but not limited to* claims and demands based on the Policy, Commitment, the Title Exam, Closing, any Contract, any Representations, any Negligence, any Intentional Torts, failure to defend, attorney fees, bad faith, or any other obligation, action, or failure to act of Fidelity National, known or unknown, which is related to the Litigation and Subject Occurrence and any other claims *that could have been asserted in the Litigation or that is related to the Subject Occurrence*.

Settlement and Release Agreement ¶ 1, Ex. A, ECF No. 219 (emphasis added). The agreement defined "Litigation" as the underlying Ohio case and defined "subject occurrence" as certain failings by Fidelity Insurance in regards to a certain policy and property. The language of this Release Agreement differs from the Release between the Reshes and Colliers, which states:

> Plaintiffs . . . do hereby unconditionally release . . . PGP, [and] its . . . successors and assigns . . . of any and all claims, demands, actions, causes of action, suits, costs, damages, lawsuits, compensation, penalties, liabilities and/or obligations of any kind or nature whatsoever, whether now known or not known or hereinafter discovered, which the Plaintiff Releasors have, could have had or may have against any or all of the PGP Releasees, from the beginning of time to the date hereof."

Settlement Agreement and Mutual Release ¶ 3, Ex. A, ECF No. 193.

The Court finds that Lawyer's Title has created an issue of material fact regarding the applicability of the Release Agreement and that the proposed amendment would at this point survive a motion for summary judgment. The Release Agreement states that it releases Lawyer's Title from all liability, "including but not limited to" certain issues, and later uses the limiting phrase of "related to the Litigation and Subject Occurrence and any other claims that could have been asserted in the Litigation or that is related to the Subject Occurrence." It is unclear, based

11

on the convoluted nature of the contract, how—if at all—the latter phrase modifies the former. There is therefore a genuine issue of material fact regarding the scope of the Release Agreement. Although the Reshes attempt to dispel any ambiguity by attaching affidavits from the Reshes explaining the scope of the Release Agreement, those affidavits are insufficient to support a finding that amendment is futile. This conclusion is only in part based on the attempt by Lawyer's Title to cast doubt on the affidavit of Ms. Reynolds-Resh by pointing out that—the day after the affidavit was signed—she gave deposition testimony that she did not recall and was not familiar with the Ohio litigation.

Based on the discussion above, the Court finds that the interests of justice favor amendment in this case, and that there is good cause for amendment.[1] Amendment in this situation will not cause prejudice to the Reshes, and the amendment is not futile. Lawyer's Title acted with due diligence in seeking amendment and has not acted in bad faith.

## V. Conclusion

For the reasons stated above, the Motion to Amend (ECF No. 219) is **GRANTED** and the Motion to Strike (ECF No. 237) is **DENIED**. The Court accordingly **DIRECTS** Lawyer's Title to file its Amended Answer within 14 days of the entry of this Memorandum Opinion and Order.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

---

[1] Because the Court is resolving the motion on the grounds outlined above, it need not discuss what effect—if any—the reservation of the right to assert additional affirmative defenses has on the ability to amend the answer.

ENTER: December 2, 2013

_____
ROBERT C. CHAMBERS, CHIEF JUDGE