IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

HSBC BANK USA,
NATIONAL ASSOCIATION,

                    Plaintiff,

v.                                    CIVIL ACTION NO. 3:12-cv-00668

RON RESH and
VALARIE REYNOLDS-RESH,

                    Defendants; Counter Claimants;
                    and Third Party Plaintiffs,

v.

REALTY CONCEPTS, LTD; ANDREW
BROSNAC; COLLIERS INTERNATIONAL
VALUATION & ADVISORY SERVICES, LLC;
PHILIP STEFFEN; HELEN SULLIVAN; and
LAWYER'S TITLE INSURANCE CORPORATION,

                    Third Party Defendants.

## MEMORANDUM OPINION AND ORDER

      Pending before the Court is a Motion by Third Party Defendants Lawyer's Title
Insurance Corporation ("Lawyer's Title"), Helen Sullivan, and Realty Concepts, Ltd. ("Realty
Concepts"), for Summary Judgment (ECF No. 328) and a Renewed Motion by Third Party
Defendants Colliers International Valuation & Advisory Services, LLC ("Colliers"), and Philip
Steffen for Summary Judgment (ECF No. 360). For the reasons explained below, the Motion by
Lawyer's Title, Ms. Sullivan, and Realty Concepts for Summary Judgment (ECF No. 328) is
**DENIED**. The Renewed Motion by Colliers and Mr. Steffen for Summary Judgment (ECF No.

360) is **GRANTED in part** and **DENIED in part**. Specifically, it is granted as to Colliers' and Mr. Steffen's request for summary judgment in their favor on the third party claims made by Ron Resh and Valarie Reynolds-Resh ("the Reshes") against them and on the crossclaims made against them by Lawyer's Title and Ms. Sullivan. Summary judgment is denied, however, as to the counterclaims made by Colliers and Mr. Steffen against the Reshes.

## I.   Background

HSBC Bank USA, National Association ("HSBC Bank") commenced the instant litigation by filing a Complaint against the Reshes, seeking over $2.6 million in unpaid principal due on three promissory notes executed by the Reshes, as well as interest, costs, fees, expenses, and interest. Compl., ECF No. 1. The Reshes had executed these three notes in order to purchase three commercial properties in Beckley, Morgantown, and Huntington, West Virginia, which all contained "Jiffy Lube" franchises.

The Reshes subsequently filed an answer, affirmative defenses, and counterclaim. ECF No. 16. Soon thereafter, with leave of the Court, the Reshes filed an amended answer, affirmative defenses, counterclaim, and third party complaint. ECF No. 20 (collectively referred to as "Third Party Complaint"). In their Third Party Complaint, the Reshes allege that the appraisals of the three properties, conducted before purchase, fraudulently over-valued the properties. They also allege that they were misled into believing that Peanut Oil, LLC—a "dummy corporation" owned by Samuel Pearson—already owned the properties at the time that the sale of the three properties to the Reshes was being negotiated, when in reality the three properties were owned by Adventure 2000. Peanut Oil bought the properties from Adventure 2000, allegedly at a much cheaper price than the Reshes later paid, shortly before Peanut Oil sold the three properties to the Reshes. The Reshes bought the properties on or about April 28, 2006,

with the understanding that Peanut Oil would fulfill a 15-year lease of the properties. The Reshes purchased the properties for over $3.5 million, making a collective down payment of a little less than $1 million and executing notes for the remainder. Shortly thereafter, Peanut Oil defaulted on the lease. Because of Peanut Oil's default, the Reshes were unable to fulfill their obligations to repay the underlying notes.

The Reshes allege that they are the victims of a fraudulent scheme in which they were induced to purchase the properties based on fraudulent information about the properties' ownership and value, and it led them to enter into leases with a party who had no intentions of fulfilling those leases. This scheme was allegedly perpetrated so that the other parties could collect a windfall at the expense of the Reshes. Specifically, the Reshes allege:

Count I: Fraudulent Misrepresentation
Count II: Fraudulent Concealment
Count III: Breach of Duty of Good Faith and Fair Dealing
Count IV: Negligent Misrepresentation
Count V: Negligence
Count VI: Unjust Enrichment
Count VII: Violations of the Racketeer Influenced & Corrupt Organizations Act ("RICO")

The Reshes assert these claims against: HSBC Bank; Realty Concepts, a real estate firm; Andrew Brosnac, who allegedly was an employee of Realty Concepts and was the Reshes' realtor; Lawyer's Title; Helen Sullivan, a former employee of Lawyer's Title; Colliers, the alleged successor in interest to PGP Valuation, Inc., the company that completed the appraisals; and Philip Steffen, an alleged former employee of PGP Valuation, Inc., and later employee of Colliers.[1]

Colliers and Mr. Steffen filed a Motion to Dismiss the Third Party Complaint, ECF No.

---

[1] This is a complete list of all Third Party Defendants, but not all claims are brought against each Third Party Defendant.

37, as did Realty Concepts, ECF No. 45. This Court denied Realty Concepts' Motion to Dismiss but granted Colliers' and Mr. Steffen's Motion to Dismiss in part; specifically, the Court dismissed Counts II, IV, V, and VII as against Colliers and Mr. Steffen. Mem. Op. & Order, ECF No. 109.

On October 24, 2013, Collier and Mr. Steffen filed their first Motion for Summary Judgment, arguing that a settlement agreement signed by the Reshes on December 2, 2010, barred the Reshes' claims against Colliers and Mr. Steffen in the instant matter. ECF No. 235; *see also* Mem. Supp. Mot. Summ. J., ECF No. 236. On April 16, 2014, this Court denied the Motion for Summary Judgment without prejudice, noting that "[t]he Reshes have raised in good faith a defense to this Motion and have sought additional discovery regarding the Settlement Agreement" and that "[t]he Reshes are entitled to this additional discovery in order to better respond to the arguments for summary judgment." Mem. Op. & Order at 6, ECF No. 345.

On April 3, 2014, before the Court issued its Memorandum Opinion and Order denying Colliers' and Mr. Steffen's original Motion for Summary Judgment, Lawyer's Title, Ms. Sullivan, and Realty Concepts filed their pending Motion for Summary Judgment. The Reshes filed a Response, ECF No. 351, and Lawyer's Title, Ms. Sullivan, and Realty Concepts filed a Reply, ECF No. 354. On June 6, 2014, Colliers and Mr. Steffen filed their Renewed Motion for Summary Judgment. The Reshes filed a Response, ECF No. 366, and Colliers and Mr. Steffen filed a Reply, ECF No. 369. Both Motions are ripe for resolution.

In Section II, the Court discusses the legal standard applicable to motions for summary judgment generally. In Section III, the Court analyzes the Motion for Summary Judgment filed by Lawyer's Title, Ms. Sullivan, and Realty Concepts. In Section IV, the Court examines the Renewed Motion for Summary Judgment filed by Colliers and Mr. Steffen.

## II.      Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his position. *Anderson*, 477 U.S. at 252.

"'[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'" *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 822 (D. Md. 1998) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)). "Thus, if the movant bears the burden of proof on an issue, . . . he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

Having discussed the standard for review of motions for summary judgment, the Court now turns to the parties' arguments concerning standing.

### III.   Motion for Summary Judgment filed by Lawyer's Title, Ms. Sullivan, and Realty Concepts

In their Motion for Summary Judgment, Lawyer's Title, Ms. Sullivan, and Realty Concepts argue that all of the Reshes' claims are barred by the applicable statutes of limitation. In resolving this Motion, first the Court will discuss whether additional time is necessary for the Reshes to fully dispute the Motion. Then the Court will examine whether the Reshes' claims have been tolled.

#### A.   Whether additional time is necessary

The Federal Rules of Civil Procedure provide that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). The Reshes argue that additional discovery is necessary for them to properly oppose the Motion for Summary Judgment. In support of this contention, they have attached to their Response the affidavit of their attorney. Aff. Shawn J. Lau, Apr. 29, 2014, ECF No. 351-7. In this affidavit, Mr. Lau represents that "additional discovery is necessary in order for the Reshes to develop the record and fully oppose the Motion," "[c]ounsel for the Reshes need to depose Andrew Brosnac . . . to determine what Brosnac knew, said, and did with regard to the causes of action raised by the Reshes," and "the Reshes believe that Brosnac withheld information about the transactions in question from the Reshes to prevent them from learning what happened." *Id.* ¶¶ 8-10. While Mr. Brosnac "did a document dump on the Reshes" sometime after the leases at issue were signed, he "did not explain what the documents meant." *Id.* ¶ 11. Additionally, Mr. Lau claims that three

6

additional depositions—of Mr. Brosnac's former assistant, another real estate broker, and the company for whom that broker worked—"would provide insight into what was done to prevent the Reshes from knowing about their causes of action." *Id.* ¶ 18. Furthermore, according to Mr. Lau, certain documents are missing which allegedly go to the issue of whether the Reshes knew or were prevented from knowing crucial information and additional review for relevant documents was to be conducted. *Id.* ¶¶ 12-13.

The relevant inquiry, when determining if additional discovery is necessary, is whether the outstanding evidence could create a genuine issue of material fact as to the grounds for which summary judgment has been sought. *See Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995) (affirming denial of motion for extension of time where "it is unclear that the [outstanding] depositions on their own would have created a genuine issue of material fact such as to defeat the College's motion for summary judgment"); *Taylor v. Miller*, No. CIV. A. 09-145-ART, 2010 WL 3700027, at *4 (E.D. Ky. Sept. 22, 2010) (where the plaintiff sought discovery concerning prison officials' interference and an internal affairs investigation, denying the motions for summary judgment without prejudice because that discovery could reveal evidence that allows the plaintiff to refute the defendants' claims about qualified immunity and exhaustion of administrative remedies).

The Court does not believe that further discovery will result in "facts essential to justify [the Reshes'] opposition" to the Motion for Summary Judgment. Fed. R. Civ. P. 56(d). As asserted by the Third Party Defendants, the relevant inquiry for determining when the statute of limitations began to run is the Reshes' knowledge, not that of Mr. Brosnac. Additionally, the Reshes have not demonstrated how any information that Mr. Brosnac might provide about his alleged concealment of information could be helpful in resolution of these issues, in light of the

other information presented regarding the Reshes' knowledge. Mr. Lau's statements about continuing document review and the three other depositions are likewise unconvincing; indeed, if those three depositions—which appear to have occurred in April—or further document review since the Response was filed had produced fruitful information, it would be expected that the Reshes' would have moved to supplement their briefing regarding the Motion for Summary Judgment, which they did not do.

Also, to the extent that the Reshes argue that this Court should delay ruling until the dispositive motion deadline expires, that argument is rejected. That deadline has only been extended to allow for the deposition of Mr. Brosnac—whose deposition the Court does not believe will bear on the issues at stake in this Motion—and the Court does not see any reason to delay ruling upon this ripe Motion.

### B. Whether West Virginia Code § 55-2-21 tolls the Reshes' claims

The Reshes argue that all applicable statutes of limitation are tolled by West Virginia Code § 55-2-21, which states:

> After a civil action is commenced, the running of any statute of limitation shall be tolled for, and only for, the pendency of that civil action as to any claim which has been or may be asserted therein by counterclaim, whether compulsory or permissive, cross-claim or third-party complaint: Provided, that if any such permissive counterclaim would be barred but for the provisions of this section, such permissive counterclaim may be asserted only in the action tolling the statute of limitations under this section. This section shall be deemed to toll the running of any statute of limitation with respect to any claim for which the statute of limitation has not expired on the effective date of this section, but only for so long as the action tolling the statute of limitations is pending.

In *Hensel Phelps Construction Company v. Davis & Burton Contractors, Inc.*, this Court discussed whether § 55-2-21 permits a party to bring a counterclaim, cross-claim, or third party complaint in a civil action when the applicable statute(s) of limitation for those claims already expired prior to the commencement of the civil action. No. 3:11-1020, 2013 WL 623071 (S.D.

W. Va. Feb. 19, 2013). This Court answered in the affirmative, finding that "§ 55-2-21 does toll claims that already expired before a civil action commenced" and that "as long as the underlying civil action is pending, the third party claim can be properly maintained; the third party claim's survival does not depend on whether its statute of limitations expired before or after the underlying civil action commenced." *Id.* at *4-5.

In so finding, the Court relied on the West Virginia Supreme Court of Appeals' decision in *J.A. Street & Associates, Inc. v. Thundering Herd Development, LLC*, 724 S.E.2d 299 (W. Va. 2011), in which the court suggested that if J.A. Street's alleged "cross-claims" were correctly so-designated and were not independent causes of action, then § 55-2-21 would in fact toll those claims. *Id.* at 309. Therefore, the operative question becomes whether the Reshes' claims against Lawyer's Title, Ms. Sullivan, and Realty Concepts constitute "counterclaim(s), whether compulsory or permissive, cross-claim(s) or [a] third-party complaint."

The Reshes, as the only defendants, clearly do not allege any cross-claims. The Reshes' claims against Lawyer's Title, Ms. Sullivan, and Realty Concepts, on their face, are part of a third party complaint. Federal Rule of Civil Procedure 14(a)(1) states, in pertinent part, that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." The Reply argues that the Reshes' third party complaint is not proper under federal law and instead constitutes an independent cause of action. This district discussed the issue in *Erickson v. Erickson*, noting that "[a] third-party claim must be 'derivative' of the plaintiff's claim because '[d]erivative liability is central to the operation of Rule 14.'" 849 F. Supp. 453, 456 (S.D. W. Va. 1994) (quoting *Watergate Landmark Condo. Unit Owners' Ass'n v. Wiss, Janey, Elstner Assocs., Inc.*, 117 F.R.D. 576, 578 (E.D. Va.1987)); *see also id.* ("'[A] third-party claim may be asserted only when the third party's

9

liability is secondary or derivative. It is not sufficient that the third-party claim is a related claim; the claim must be derivatively based on the original plaintiff's claim.'" (quoting *United States v. One 1977 Mercedes Benz,* 708 F.2d 444, 452 (9th Cir.1983))).

In *Erickson*, a woman sued her deceased husband's son—executor of the husband's estate—for an accounting of property within the marital estate, and the son then filed a third party complaint against the wife's current and former lawyers, arguing that they were responsible for contribution based on their own failures to fulfill their professional duties toward the wife. The Court found that the third party complaint did not comply with Rule 14(a) because "Defendant and Plaintiff's lawyers do not have common obligations for the allegations in the Plaintiff's complaint" and "[t]he Plaintiff's lawyers had no control over nor any responsibility for the Defendant's actions." *Id.* at 458. However, unlike the defendant's third party complaint in *Erickson*, here the Reshes' Third Party Complaint presents claims that *are* fairly viewed as derivative of HSBC Bank's original claim. In fact, the third-party claims seem analogous, to a certain extent, to those in *Hensel Phelps*. *See Hensel Phelps*, 2013 WL 623071, at *1 (alleging not only indemnification against third party defendant, but also negligent design, breach of implied warranty of plans and specifications, negligent misrepresentation, and negligent misrepresentation and supervision).

One could try to argue that the Reshes' claims against Lawyer's Title, Ms. Sullivan, and Realty Concepts are counterclaims for which Lawyer's Title, Ms. Sullivan, and Realty Concepts, as additional parties, were joined, as all seven counts in the Reshes' Third Party Complaint are alleged against HSBC Bank in additional to at least one of these three Third Party Defendants. *See* Fed. R. Civ. P. 13(h) (noting that "the addition of a person as a party to a counterclaim or crossclaim" is permitted, pursuant to Rules 19 and 20). If viewed as compulsory counterclaims,

the Court must determine if the claims "arise[] out of the transaction or occurrence that is the subject matter of" HSBC Bank's claims. Fed. R. Civ. P. 13(a)(1)(A). *J.A. Street* provides, "To determine whether a [claim] arises out of the same transaction or occurrence as the original action, there are three nonexclusive factors to be considered: (1) the identity of facts and law between the initial claim and the cross-claim; (2) the mutuality of proof and whether substantially the same evidence will support or refute both the complaint and the cross-claim; and (3) the logical relationship between the original claim and the cross-claim." Syl. pt. 9, 724 S.E.2d 299.[2] There is a very strong logical relationship between the original claims and the Reshes' claims—HSBC Bank accuses the Reshes of not fulfilling their note obligations, while the Reshes allege that they would not have entered into the notes if not for the fraudulent conduct of HSBC Bank acting in concert with others. This strong logical connection overcomes any weaknesses in the identity of fact and mutuality of proof.

For permissive counterclaims, "persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Here, each request for relief is asserted jointly and severally. Additionally, questions of law or fact common to all Third Party Defendants will arise in this case, namely, their participation in a scheme to defraud the Reshes. The counterclaims arise out of the original claim. Therefore, no matter how the Reshes' claims are construed, those claims are proper and thus subject to tolling under West Virginia Code § 55-2-21.

---

[2] Although that syllabus point involves crossclaims, the syllabus point is just as applicable to counterclaims because Rule 13(g) allows as crossclaims any claim against a coparty that "arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim," thus mirroring the language regarding counterclaims.

Lawyer's Title, Ms. Sullivan, and Realty Concepts also attempt to show that the Reshes' third party claims are independent causes of action by pointing to the Reshes' litigation in Pennsylvania. In 2010, California Credit Union brought suit against the Reshes in Berks County, Pennsylvania, seeking foreclosure on the Reshes' mortgage. *See* ECF No. 329-2 (docket sheet from that civil action). The Reshes thereafter filed their own lawsuit against California Credit Union, Mr. Brosnac, Lawyer's Title, Realty Concepts, and another company, raising claims similar those alleged in the instant case. *See* ECF No. 329-3 (docket sheet from the Reshes' civil action in Berks County). The Court will not inquire into the propriety of the Reshes' filing a separate lawsuit in that case or the possible motives behind that decision. Such an inquiry is not necessary because the Court believes that the claims raised by the Reshes' in the instant case are *not* independent causes of action.

Therefore, no matter how the Reshes' claims are interpreted, they are eligible for tolling pursuant to West Virginia Code § 55-2-21. Because the claims are tolled, there is no need to consider alternative arguments concerning tolling. The Motion for Summary Judgment brought by Lawyer's Title, Ms. Sullivan, and Realty Concepts is accordingly denied.

**IV.     Renewed Motion for Summary Judgment filed by Colliers and Mr. Steffen**

In their Renewed Motion for Summary Judgment, Colliers and Mr. Steffen request summary judgment in their favor on the remaining claims asserted against them in the Third Party Complaint. This Court previously dismissed Counts II, IV, V, and VII as against Colliers and Mr. Steffen. ECF No. 109. Therefore, as Counts III and VI were never alleged against Colliers and Mr. Steffen to begin with, only Count I (fraudulent misrepresentation) remains against Colliers and Mr. Steffen. Colliers and Mr. Steffen also seek summary judgment in their favor on the crossclaims filed by Lawyer's Title and Ms. Sullivan against them, as well as on

Colliers' and Mr. Steffen's own counterclaims against the Reshes. Colliers and Mr. Steffen argue that a certain settlement agreement ("the Agreement") signed by the Reshes on December 2, 2010 in a separate case in Ohio bars the instant claims against Colliers and Mr. Steffen and also entitles Colliers and Mr. Steffen to attorneys' fees from the Reshes.

### A. Whether the Renewed Motion is premature

Like with the other pending Motion for Summary Judgment, the Reshes argue that the Renewed Motion for Summary Judgment is premature. In support of this contention, the Reshes state that the deposition of Mr. Brosnac has yet to occur and that he will provide information concerned PGP Valuation, Inc., and Mr. Steffen; however, the Reshes have not convincingly shown that the expected information that Mr. Brosnac might provide would create a genuine issue of material fact that bears on resolution of the Renewed Motion, namely, the scope and effect of the Agreement, in light of the other information presented by Colliers and Mr. Steffen. The Reshes also argue that, as of the date of their Response, expert Jay Goldman had yet to be deposed; he allegedly would provide information concerning violations of the Uniform Standards of Professional Appraisal Practice. This deposition appears to have taken place on June 24, 2014. *See* Am. Notice Dep., ECF No. 365. There is no indication that his deposition would—or did—provide information relevant to analysis of the Agreement. This finding is confirmed by the fact that although Mr. Goldman's deposition apparently occurred, the Reshes did not make any supplemental filing concerning evidence discovered during the deposition. The Reshes additionally argue that discovery is ongoing. Since filing their Response, however, the only outstanding piece of discovery appears to be Mr. Brosnac's deposition, and the Reshes have not sought leave to file any brief outlining supplemental information that they learned from any other discovery that occurred. Unlike *Miller v. Dell Financial Services, LLC*, cited by the

Reshes, here there has been adequate time for discovery, such that resolution of the Renewed Motion should not be delayed. No. 5:08-cv-01184, 2009 WL 1362485, at *2 (S.D. W. Va. May 13, 2009). There appears to be no need to wait until the dispositive motion deadline expires to rule on this ripe Motion.

### B. Whether the Agreement bars the claims against Colliers and Mr. Steffen

Next, the Court considers whether the Agreement bars the claims brought against Colliers and Mr. Steffen by the Reshes, keeping in mind that Colliers and Mr. Steffen bear the burden of proof on this issue. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (noting that "the burden of establishing the affirmative defense rests on the defendant").

On December 2, 2010, the Reshes signed a Settlement Agreement and Mutual Release ("the Agreement") in connection with a lawsuit filed by the Reshes in Ohio. Agreement, ECF No. 360-1. The Agreement was entered into by the Reshes, "as Trustees of the Ron Resh Living Trust Dated May 28, 1992[,] and . . . as Trustees of the Resh Living Trust Dated May 28, 1992,"[3] by FirstService PGP Valuation, Inc., and by Russell W. McCoy.[4] *Id.* at 1. The signature page clearly states that FirstService PGP Valuation, Inc.,—referred to as "PGP" in the Agreement— was formerly known as PGP Valuation, Inc., as does the opening paragraph of the Agreement. *Id.* at 1, 6. The Agreement notes the existence of the Ohio litigation but that "the Parties now desire to settle and resolve any and all of their differences, disputes, and claims in accordance with the terms and conditions hereinafter set forth." *Id.* at 1. Further,

---

[3] The Reshes are sued in the instant case individually and as trustees of the Resh Living Trust and the Valarie Reynolds-Resh Living Trust. The Court notes that there is not a clear identity between the trusts noted in the Agreement and in the instant case. However, because the Reshes do not argue otherwise, and because of the Agreement's broad terms concerning the capacities in which the Reshes are releasing their claims, *see id.* ¶ 3, the Court finds that the Agreement covers the Reshes in their individual and trust capacities in the instant case.

[4] Mr. McCoy was an individual associated with PGP Valuation, Inc. *See id.* at 1.

> Plaintiffs . . . in their trust-related and individual capacities . . . do hereby unconditionally release, compromise, and fully, finally, completely and forever discharge PGP, its parents, subsidiaries, divisions, shareholders, affiliates, agents, representatives, servants, independent contractors, employees, officers, directors, general partners, limited partners, members, past, present and future heirs, administrators, executors, attorneys, successors and assigns, in their corporate and individual capacities . . . of and from any and all claims, demands, actions, causes of action, suits, costs, damages, lawsuits, compensation, penalties, liabilities and/or obligations of any kind or nature whatsoever, whether now known or not known or hereafter discovered, which the Plaintiff Releasors have, could have had or may have against any and all of the PGP Releasees, from the beginning of time to the date hereof.

*Id.* ¶ 3. The Agreement then specifies that the Agreement does not release or settle "any other claims within the Lawsuit that Plaintiffs have against the other parties to the Lawsuit." *Id.* Additionally, "[t]his Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective trustees, beneficiaries, past, present and future heirs, administrators, executors, successors, assigns, parents, subsidiaries, affiliates, shareholders, officers, directors, employees, general partners, limited partners, and all others in privity therewith." *Id.* ¶ 5. Ohio law applies to analysis of the Agreement. *Id.* ¶ 11.

The Reshes argue that there is a genuine issue of material fact as to who drafted the Agreement and that this is significant because ambiguities in a contract are interpreted in favor of the non-drafting party. *See Fabrizio v. Hendricks*, 654 N.E.2d 127, 130 (Ohio Ct. App. 1995) ("If there is any doubt or ambiguity in the language of a contract it will be construed strictly against the party who prepared it."). Additionally, if a contract is ambiguous, then extrinsic evidence may be considered in order to resolve the ambiguity. *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 716 N.E.2d 1201, 1208 (Ohio Ct. App. 1998). However, these points are only important if indeed the Agreement is ambiguous. "Contractual language is 'ambiguous' only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Id.*

The Reshes argue that the Agreement is ambiguous as to whether it only pertains to claims within the scope of the Ohio litigation. In support of their contention that there is a genuine issue of fact concerning the scope of the Agreement, the Reshes point to affidavits they completed after their depositions. Ms. Reynolds-Resh's affidavit states that "her intent and understanding" was that the Agreement "was limited to the Ohio Action and the Medina Transaction" and that she did not intend to waive any rights regarding the West Virginia real estate transactions.  Aff. Valarie Reynolds, Nov. 6, 2013, ¶¶ 13, 18, ECF No. 366-4. Mr. Resh states the same thing in his affidavit. Aff. Ron Resh, Nov. 6, 2013, ¶¶ 13, 18, ECF No. 366-3. However, the Reshes' affidavits—completed after their depositions in September 2013—cannot be used to suggest an ambiguity or a genuine issue of material fact:

> A movant may defeat a motion for summary judgment by demonstrating that a genuine issue of material fact exists by referencing matters in the record, including depositions and affidavits. Fed. R. Civ. P. 56(c). But it cannot create a dispute about a fact that is contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct.

*In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011) (internal quotation marks omitted).

According to the Reshes, Colliers and Mr. Steffen themselves acknowledge that ambiguities exist in the Agreement, as Colliers and Mr. Steffen stated that "[e]ven if the Release were ambiguous, the Reshes' affidavits, at the most, create a question of fact as to the parties' intent," which would "preclude this Court from granting summary judgment in favor of the Reshes." Reply Mot. Amend Answers Count I Third Party Compl. ¶ 19 (citations omitted), ECF No. 207. However, that statement was made in the context of Colliers' and Mr. Steffen's request for leave to amend to assert the affirmative defense of release based on the Agreement. After

16

arguing that the Agreement was *not* ambiguous, Colliers and Mr. Steffen included this alternative argument as to why, even if the Agreement was ambiguous, leave to amend should still be granted. Therefore, the statement does not support a finding that the Agreement is ambiguous.

In support of their argument that the Agreement is ambiguous, the Reshes cite *Walsh v. Marsh Building Products, Inc.*, No. CA2009-10-130, 2010 WL 703256 (Ohio Ct. App. 2010), in which a court was tasked with determining whether a contract regarding windows was ambiguous. In the pertinent contract, the parties agreed to release "any and all past, present and future claims, demands obligations or causes of action, of whatsoever kind or nature, which have or may in the future arise out of any of the Marvin products described above." *Id.* at *3 (quoting the contract). While previous provisions in the contract clearly noted windows that had been installed in 1989, they did not clearly note replacement windows installed in 1999. *Id.* at *4. The court found that the contract was ambiguous as to whether it covered claims related to the replacement windows. *Id. Walsh* is distinguishable from the instant situation because while the release provision in *Walsh* expressly limited its application to claims "aris[ing] out of any of the Marvin products described above," the instant Agreement's release provisions do not contain such a limitation.

Colliers and Mr. Steffen cite to *Seals v. General Motors Corp.*, 546 F.3d 766 (6th Cir. 2008), where an employee was injured on the job and subsequently sued his employer in tort. After commencing his tort lawsuit, the employee agreed to a voluntary buyout of his future employment, unrelated to his tort lawsuit. The agreement signed as part of the buyout stated, "I hereby release and forever discharge [General Motors] . . . from all claims, demands and causes of action, (claims) known or unknown which I may have related to my employment or the

cessation of my employment or denial of any employee benefit." *Id.* at 769 (quoting the agreement). The Sixth Circuit affirmed the district court's decision that the release barred the plaintiff's intentional tort lawsuit. *Id.* at 768. In so doing, the Sixth Circuit noted that the employee "agreed to a broad release of claims against GM, including 'all claims, demands and causes of action,' 'known or unknown,' 'which I may have related to my employment,'" which "plainly and unambiguously includes the plaintiff's then existing claim, recently asserted in the pending lawsuit, for workplace intentional tort." *Id.* at 772. The Sixth Circuit also suggested that there was no evidence of a latent ambiguity, as the employee "'failed to demonstrate fraud, mutual mistake or the existence of an ambiguity on the face of the contract.'" *Id.* at 771-72 (quoting *Shifrin v. Forest City Enters., Inc.*, 597 N.E.2d 499, 502 (Ohio 1992)). The Agreement in the instant case is similarly unambiguous about its scope. Additionally, neither fraud nor mutual mistake in the completion of the Agreement has been demonstrated.

Colliers and Mr. Steffen also cite *Davis v. Cincinnati Metropolitan Housing Authority, Inc.*, No. 1:11CV533 WOB-KLL, 2013 WL 5876051 (S.D. Ohio Oct. 30, 2013), where the parties signed a settlement agreement which stated, in pertinent part,

> Plaintiffs and Defendants agree to fully and finally release each other from any and all legal and equitable claims arising out of the Lawsuit as well as up through the date of this Settlement Agreement. . . . For their part, Defendants specifically hereby forever release, acquit, hold harmless and discharge Plaintiffs and Plaintiffs' heirs, successors and assigns, insurers, attorneys, agents, representatives, and employees from all claims, demands, actions and causes of action, obligations, damages, costs or expenses, including attorneys' fees, known or unknown, contingent or otherwise, and whether specifically mentioned or not, that they now have or have had or which might be claimed to exist at or prior to the date of this Agreement.

*Id.* at *2 (quoting the settlement agreement). Although the "[d]efendants assert[ed] that they did not release claims for [certain] amounts because plaintiff Kinkade's obligations to pay such amounts purportedly do not arise out of the parties' lawsuit giving rise to the Settlement

Agreement," the court disagreed with that argument. *Id.* at *6. The court found the settlement agreement to be unambiguous on this point, as "defendants clearly released plaintiff Kinkade from any claims, obligations or damages that arose prior to the date of the Settlement Agreement." *Id*. Based on this authority and the language of the Agreement in this case, the Court finds that the Agreement unambiguously releases all claims that arose before the Agreement was signed, not just claims related to the Ohio litigation.

Having determined that the Agreement is not ambiguous, the Court next determines whether the Agreement does in fact release Colliers and Mr. Steffen from liability as intended third-party beneficiaries of the contract. First, the Court considers whether the Agreement releases Colliers from liability, and then the Court turns to Mr. Steffen.

The Third Party Complaint alleges that Colliers is a successor in interest to PGP Valuation, Inc. Third Party Compl. ¶ 9. The Reshes argue that there is a genuine issue of material fact regarding Colliers' relationship with PGP Valuation, Inc. In support of this contention, the Reshes point out that when asked to admit that "Colliers is the successor in interest to PGP," Colliers answered as follows: "The term 'successor in interest' is vague and undefined. Moreover, this Request calls for a legal conclusion. Subject to but without waiving these objections, Colliers admits that it has assumed liabilities of PGP Valuation, Inc. ('PGP') arising out of the allegations in the Third-Party Complaint." Colliers' Resps. Defs' "Request Admiss. Directed Colliers" ¶ 1, ECF No. 366-7. The Reshes also point to "[t]he strange and convoluted nature of the name changes, mergers, acquisitions, and assignments between the various entities [which] leaves questions as to whether Colliers was in fact a successor to PGP as contemplated by Paragraph 3 of the Ohio Settlement." Reshes' Resp. at 12.

Even if Colliers' response to the request for an admission could be interpreted as creating a genuine issue of fact as to whether Colliers is a *successor* of PGP Valuation, Inc., the Reshes have presented no evidence refuting Colliers' evidence that it is an *assign* of PGP Valuation, Inc., other than the vague assertion that the evidence regarding mergers, etc. is too convoluted for summary judgment to be granted. PGP Valuation, Inc., merged into FirstService Corporation in November 2006. *See* Purchase Agreement (discussing the purchase of PGP Valuation, Inc., by a subsidiary of FirstService Corporation), ECF No. 360-3; Philip Steffen Dep., Feb. 19, 2014, 256:4-11 (explaining that the Purchase Agreement shows that the two entities were being combined), ECF No. 360-2. In November, 2009, PGP Valuation, Inc., changed its name to FirstService PGP Valuation, Inc. *See* Articles Amendment, ECF No. 360-9; Steffen Dep., 257:2-6 (explaining the name change). In 2010, as discussed earlier, FirstService PGP Valuation, Inc., signed the Agreement underlying this Renewed Motion for Summary Judgment. In January, 2011, FirstService PGP Valuation, Inc., changed its name to Colliers International Valuation & Advisory Services, Inc. *See* Articles Amendment, ECF No. 360-10; Steffen Dep., 257:21-258:3 (explaining the name change).

In November 2011, PGP Holdings (US) created Colliers International Valuation & Advisory Services, LLC—the Third Party Defendant referred to as "Colliers" throughout this Memorandum Opinion and Order—and became Colliers' sole member. *See* Limited Liability Co. Operating Agreement, ECF No. 360-11. As of December 27, 2011, Colliers International Valuation & Advisory Services, *Inc.*, assigned all of its rights and obligations to Colliers International Valuation & Advisory Services, *LLC*. *See* Assignment & Assumption Agreement (assigning, inter alia, "all rights and obligations under any contracts relating to the Assignor or its Property"), ECF No. 360-12; Steffen Dep., 258:14-22. The uncontroverted evidence therefore

20

shows that Third Party Defendant Colliers International Valuation & Advisory Services, LLC, is an assign of the Agreement signed by FirstService PGP Valuation, Inc., and, pursuant to the terms of the Agreement, released from liability for the Reshes' claims. There is no genuine dispute of material fact on this point. Additionally, the factual record on this point is clear. Accordingly, there is no need to reach the issue of Colliers' status as a successor.

The Court next turns to the issue of whether Mr. Steffen, based on the Agreement, is likewise released from liability for the Reshes' claims. The Third Party Complaint alleges that Mr. Steffen is an employee of Colliers and was formerly an employee of PGP Valuation, Inc. Third Party Compl. ¶ 10. The Reshes argue that Colliers and Mr. Steffen have taken "inconsistent positions" regarding his "employment status," pointing to alleged inconsistencies between statements made in deposition and in a request for admissions. Reshes' Resp. at 11. It is not necessary to reach the issue of Mr. Steffen's employment status because no genuine issue of material fact exists that Mr. Steffen falls into at least one other category by which he is released from liability pursuant to the terms of the Agreement. Mr. Steffen stated in his deposition that he was a shareholder of PGP Valuation, Inc., when he completed the appraisals and when the Agreement was signed. Steffen Dep. 254:4-10; *see also id.* at 253:15-254:3 (discussing his shareholder status). The Agreement releases claims against PGP Valuation, Inc.'s shareholders, and therefore, the Reshes' claims against Mr. Steffen are barred. The Reshes do not refute Mr. Steffen's status as a shareholder.

Even putting aside Mr. Steffen's status as a shareholder, there is no genuine issue of material fact that Mr. Steffen was at the least an employee—if not also an agent, director, and officer at PGP Valuation, Inc., when the Agreement was signed. Mr. Steffen stated in his deposition that he was an employee and director, and perhaps also an agent, of PGP Valuation,

21

Inc., when the Agreement was signed. Steffen Dep., 250:23-251:7. In response to a request for admissions as to whether Mr. Steffen was an employee of PGP Valuation, Inc., and currently an employee of Colliers, Colliers "admit[ted] that Philip Steffen was an associate of PGP at the time of the appraisals in this case" and "admit[ted] that Philip Steffen is an associate of Colliers." Colliers' Resps. Defs' "Request Admiss. Directed Colliers" ¶¶ 2-3. These statements—expressly using the word "admits"—are not inconsistent with the suggestion that Mr. Steffen is or was an employee. There is no genuine issue of material fact as to whether Mr. Steffen is released under one or more categories of the Agreement.

The Reshes also point to an alleged question of fact as to when they knew or should have known certain facts regarding the transactions in this case. However, the Agreement clearly releases all claims, whether known at the time of signing or unknown, which arose on or before the Agreement was signed. There is no question that the claims relating to the West Virginia transactions arose before the Reshes signed the Agreement. Additionally, the Reshes do not allege mutual mistake such that the Agreement should be found invalid. In summary, there is no genuine issue of material fact that the Agreement covers the claims underlying the instant case and that Colliers and Mr. Steffen are parties who are released from liability to the Reshes based on that Agreement. Therefore, Colliers and Mr. Steffen are entitled to summary judgment in their favor on the Reshes' remaining claims against them.

### C. Whether summary judgment is warranted on the crossclaims filed against Colliers and Mr. Steffen

Colliers and Mr. Steffen request summary judgment in their favor on the crossclaims filed by Lawyer's Title and Ms. Sullivan against them. Lawyer's Title brings crossclaims for contribution and indemnification against Colliers and Mr. Steffen, ECF No. 36, as does Ms.

Sullivan, ECF No. 301.[5] Lawyer's Title and Ms. Sullivan filed no response to this Renewed Motion for Summary Judgment. Under West Virginia law, "[a] party in a civil action who has made a good faith settlement with the plaintiff prior to a judicial determination of liability is relieved from any liability for contribution." Syl. pt. 6, *Bd. of Educ. of McDowell Cnty. v. Zando, Martin & Milstead, Inc.*, 390 S.E.2d 796 (W. Va. 1990). No evidence has been presented indicating that the Agreement was not signed in good faith.

Similarly, Lawyer's Title and Ms. Sullivan cannot seek indemnification from Colliers and Mr. Steffen. *Schoolhouse Ltd. Liab. Co. v. Creekside Owners Ass'n*, No. 13-0812, 2014 WL 1847829, at *3 (W. Va. May 8, 2014) ("[T]he respondents maintain that Schoolhouse cannot succeed on its implied indemnity cross-claim. In short, the respondents argue that if Schoolhouse is found to be liable to Creekside, it cannot assert an implied indemnity claim because such claims can only be asserted by a fault-free party and, if Schoolhouse is found to be faultless, there would be nothing for the settling defendants to indemnify because Schoolhouse will not be obligated to pay any damages. We agree."). Therefore, Colliers and Mr. Steffen are entitled to summary judgment in their favor on the crossclaims made against them by Lawyer's Title and Ms. Sullivan.

### D. Whether summary judgment is warranted on the counterclaims made by Colliers and Mr. Steffen against the Reshes

Colliers and Mr. Steffen have filed counterclaims against the Reshes for breach of contract and breach of the duty of good faith and fair dealing. ECF Nos. 216, 217. The parties' arguments regarding these claims are brief. The Court believes that genuine issues of material

---

[5] Interestingly, Realty Concepts has also filed crossclaims against Colliers and Mr. Steffen for indemnification and contribution, ECF No. 114, but Colliers and Mr. Steffen do not seek summary judgment in their favor on those crossclaims.

fact remain as to these claims—especially in light of the brevity of the parties' arguments—and, accordingly, will not grant summary judgment on the counterclaims at this time.

## V.     Conclusion

For the reasons explained above, the Motion by Lawyer's Title, Ms. Sullivan, and Realty Concepts for Summary Judgment (ECF No. 328) is **DENIED**. The Renewed Motion by Colliers and Mr. Steffen for Summary Judgment (ECF No. 360) is **GRANTED in part** and **DENIED in part**. Specifically, it is granted as to Colliers' and Mr. Steffen's request for summary judgment in their favor on the Reshes' third party claims against them and on the crossclaims made against them by Lawyer's Title and Ms. Sullivan. Summary judgment is denied, however, as to the counterclaims made by Colliers and Mr. Steffen against the Reshes.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:      August 21, 2014

ROBERT C. CHAMBERS, CHIEF JUDGE