## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

HSBC BANK USA,
NATIONAL ASSOCIATION,

                    Plaintiff and Counter Defendant,

v.                                     CIVIL ACTION NO. 3:12-cv-00668

RON RESH and
VALARIE REYNOLDS-RESH,

                    Defendants; Counter Claimants; Counter Defendants;
                    and Third Party Plaintiffs,

v.

REALTY CONCEPTS, LTD;
HELEN SULLIVAN; and
LAWYER'S TITLE INSURANCE CORPORATION,

                    Third Party Defendants; Counter Claimants; Cross Claimants; and
                    Cross Defendants,

*and*

ANDREW BROSNAC,

                    Third Party Defendant and Cross Defendant.

REALTY CONCEPTS, LTD.;
HELEN SULLIVAN;
RON RESH; and
VALARIE REYNOLDS-RESH,

                    Fourth Party Plaintiffs,

v.

UPLAND REAL ESTATE GROUP, INC.;

LUBECENTER SALES, INC.,

                         Fourth Party Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Lawyer's Title Insurance Corporation, Helen Sullivan, and Realty Concepts, Ltd.'s Joint Motion to Dismiss or Strike Fourth Party Complaint (ECF No. 423), LubeCenter Sales, Inc.'s Motion to Dismiss for Absence of Personal Jurisdiction (ECF No. 456), Upland Real Estate Group, Inc.'s Motion to Strike Direct Fourth Party Complaint Against Upland Real Estate Group, Inc. Pursuant to Rule 14(a)(3) (ECF No. 460), LubeCenter Sales, Inc.'s Motion to Dismiss the Purported Direct Fourth Party Complaint Filed by Defendants/Third-Party Plaintiffs Ron Resh and Valarie Reynolds-Resh Pursuant to Rule 12(b)(6) (ECF No. 462), Upland Real Estate Group, Inc.'s Motion to Dismiss Defendants/Third-Party Plaintiffs' Direct Fourth Party Complaint Against Upland Real Estate Group, Inc. (ECF No. 463), Upland Real Estate Group, Inc.'s Motion to Dismiss Fourth Party Complaint of Realty Concepts, Ltd., Fourth Party Complaint of Lawyer's Title Insurance Corporation and Fourth Party Complaint of Helen Sullivan (ECF No. 466), LubeCenter Sales, Inc.'s Motion to Dismiss Fourth Party Complaint of Realty Concepts, Ltd., Fourth Party Complaint of Lawyer's Title Insurance Corporation and Fourth Party Complaint of Helen Sullivan (ECF No. 468), and Upland Real Estate Group, Inc.'s Motion to Reconsider Order Granting Consent Motion to Amend Third-Party Answer for Sole Purpose of Filing Fourth Party Complaint (ECF No. 470).

## I.      Introduction

Defendants Ron Resh and Valerie Reynolds-Resh ("the Reshes"), and Third-Party Defendants Lawyer's Title Insurance Corporation, Helen Sullivan, and Realty Concepts, Ltd., ("Third-Party Defendants"), have filed fourth-party complaints against LubeCenter Sales, Inc.

("LubeCenter") and Upland Real Estate Group, Inc. ("Upland").  All of the claims in the fourth-party complaints against LubeCenter and Upland arise from a complex transaction between the Reshes, Peanut Oil, LLC ("Peanut Oil"), and BLX Capital, LLC ("BLX"), the predecessor to HSBC Bank USA, N.A. ("HSBC").  The basic transaction involved the Reshes, California residents acting through a trust, purchasing several lube center businesses in West Virginia and elsewhere from Peanut Oil and then leasing the businesses back to Peanut Oil to operate them, with financing supplied by BLX.  The Reshes personally guaranteed repayment of the amounts borrowed from BLX.  The fourth-party complaints arise from the fact that each party to the transaction employed at least one other firm to obtain documents and financial materials and provide advice over the course of the transaction.  Further, the transaction itself became more than a simple sale and lease back, eventually entailing several interrelated transactions to accomplish the primary deal between the Reshes and Peanut Oil.

Within a few years of the transaction, the lube centers were performing poorly and the Reshes fell behind on their payments. In 2011, the bank foreclosed on the properties.  When the foreclosure sales did not yield enough proceeds to satisfy the Reshes' debt, HSBC sued the Reshes to collect on the personal guaranties that they executed to secure the debt.  The Reshes in turn filed a third-party complaint, impleading entities that they identified as conspiring with Peanut Oil in a scheme to defraud them.  After a lengthy period of discovery, the third-party defendants and the Reshes filed fourth-party complaints against LubeCenter and Upland, expanding the number of entities allegedly involved in the conspiracy.  Each fourth-party defendant has submitted motions to dismiss the fourth-party complaints on several grounds.  As the issues of personal jurisdiction and failure to state a claim are closely intertwined, the Court will address both below.

## II.     Motions to Dismiss for Lack of Personal Jurisdiction

### A.  Personal Jurisdiction Generally

Where a defendant files a motion to dismiss for lack of personal jurisdiction and the court decides the "motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction."  *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). "[T]he district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor."  *Id.*

To prove that a court has specific jurisdiction over an out-of-state defendant, a plaintiff must show that jurisdiction is authorized by the long-arm statute of the state in which the court sits and that exercise of such jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment.  *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Where, as here, the state's long-arm statute is coextensive with the full reach of the Due Process Clause, the statutory and constitutional questions merge into one inquiry.  *In re Celotex Corp.*, 124 F.3d 619, 627-28 (4th Cir. 1997).   Courts in this Circuit have identified a three-part test for determining whether asserting personal jurisdiction over an out-of-state defendant comports with the Due Process Clause.   The Court must examine "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."  *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotation marks omitted).

The first prong of the test reflects the constitutional requirement that an out-of-state defendant "have sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Consulting*

*Eng'rs*, 561 F.3d at 277 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). Several factors are helpful in determining whether this first prong is met with respect to a business:

> (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) "whether the performance of contractual duties was to occur within the forum."

*Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 560 (4th Cir. 2014) (quoting *Consulting Eng'rs*, 561 F.3d at 278). Generally, where an out-of-state defendant has "substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute," the defendant has sufficiently availed itself of the privileges of doing business in the forum. *Tire Eng'g and Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012). Courts in this circuit generally do not find purposeful availment, however, where "the locus of the parties' interaction was overwhelmingly abroad." *Id.*

As more fully discussed below, one of the fourth-party defendants advertised the lube centers for sale through a website. Where a defendant's alleged contacts with the forum state arise out of the defendant's operation of a website, the level of interactivity on the website generally determines whether the defendant's contacts with the forum are sufficient. Where a defendant runs an interactive site through which residents of the forum state can transmit files and communications, the defendant may properly be brought into the courts of the forum state. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 399 (4th Cir. 2003). In contrast, if the defendant runs a passive site that "merely makes information available," the fact that the website can be accessed by residents in a different state is insufficient to give courts in that

5

state personal jurisdiction over the defendant.   *Id.*   Thus a court may, consistent with due process, exercise jurisdiction over a defendant who "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts."   *ALS Scan*, 293 F.3d at 714.

Turning to the second prong of the test, it asks whether the claims against an out-of-state defendant arise from the defendant's activities in the forum state.   *Consulting Eng'rs*, 561 F.3d at 278-79.   To assert specific jurisdiction, the court must find that the claims against the defendant result from the defendant's contacts with the forum, not from activities unrelated of the forum.   If a plaintiff successfully demonstrates prongs one and two, the court must assess the third prong. *Id.* at 279.   The third prong ensures that exercising jurisdiction over the out-of-state defendant is fair and reasonable within the meaning of the Due Process Clause.   Courts may consider:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Id.*   If the court finds that asserting jurisdiction is constitutionally reasonable under this final prong, the court may exercise personal jurisdiction over the out-of-state defendant.

### B.  Personal Jurisdiction in Conspiracy Cases

The Reshes maintain that this Court may exercise jurisdiction over the fourth-party defendants because they participated in a conspiracy against the Reshes.   Several courts, including the Fourth Circuit, recognize a conspiracy-based theory of personal jurisdiction.   Under this theory, a court may exercise jurisdiction over an out-of-state defendant who would otherwise be beyond the court's reach if the defendant is part of an alleged conspiracy and the court has

6

personal jurisdiction over one or more of the defendant's coconspirators.   *Lolavar v. de Santibanes*, 430 F.3d 221, 229 (4th Cir. 2001).   To prevail using this theory of jurisdiction, a plaintiff must "make a plausible claim" that (1) a conspiracy existed, (2) the out-of-state defendant participated in the conspiracy, and (3) a coconspirator's activity in furtherance of the conspiracy created sufficient minimum contacts with West Virginia such that the coconspirator is subject to personal jurisdiction in West Virginia.   *See Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013).   "To satisfy these requirements, the plaintiffs would have to rely on more than 'bare allegations.'"   *Id.* (quoting *Lolavar*, 430 F.3d at 229).   A plaintiff must instead make a prima facie case demonstrating that the out-of-state defendant participated in a conspiracy, and that at least one coconspirator is subject to personal jurisdiction in the forum.

### C.  Personal Jurisdiction in RICO Cases

The Reshes' fourth-party complaint contains a cause of action for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").   RICO provides for nationwide service of process.   18 U.S.C. § 1965(d).   "Where Congress has authorized nationwide service of process by federal courts under specific federal statutes, so long as the assertion of jurisdiction over the defendant is compatible with due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant."   *Hogue v. Milodon Eng'g, Inc.*, 736 F.2d 989, 991 (4th Cir. 1984).   Accordingly, if a defendant in a RICO action is properly served and fails to demonstrate that the assertion of jurisdiction would violate due process, the court may exercise personal jurisdiction over that defendant.   *See ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997).

To succeed under this theory, of course, the plaintiff must have a colorable claim against the defendant under RICO.   *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d

935, 941 (11th Cir. 1997).   Moreover, even if the plaintiff has a colrable claim and has properly served the defendant, if the defendant can demonstrate that the exercise of jurisdiction would violate due process, the court must not assert jurisdiction over the defendant.   *Id.* at 942.   In a case where personal jurisdiction depends on a federal statute authorizing nationwide service of process, "the constitutional limits of due process derive from the Fifth, rather than the Fourteenth, Amendment."   *Id*.   The Fifth Amendment looks at a defendant's contacts with the United States as a whole, rather than its contacts with the forum state.   *Id.* at 947.   "There are circumstances, although rare, in which a defendant may have sufficient contacts with the United States as a whole but still will be unduly burdened by the assertion of jurisdiction in a faraway and inconvenient forum."   *Id.*   The defendant bears the burden of showing that the exercise of jurisdiction will make litigation so difficult and inconvenient as to place the defendant at a severe disadvantage. *Id.*   (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).   "When a defendant makes a showing of constitutionally significant inconvenience, jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant."   *Id.* at 948.

### D.  Pendent Personal Jurisdiction

The Reshes urge this Court to assert pendant personal jurisdiction over the fourth-party defendants with respect to the state-law claims against them.   Pendent jurisdiction permits a federal court to exercise jurisdiction over state-law claims when the federal and state claims in a given case "derive from a common nucleus of operative fact."   *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).   The Fourth Circuit has recognized an analogous theory, pendent personal jurisdiction, which permits "a district court which has obtained personal jurisdiction over a defendant by reason of a federal claim to adjudicate state claims properly within

8

the court's subject matter jurisdiction, even though that state's long-arm statute could not authorize service over the defendants with respect to the state claims." *ESAB*, 126 F.3d at 628. Under the theory of pendant personal jurisdiction, once the court has asserted personal jurisdiction over a defendant with respect to a federal claim the court may, in its discretion, assert personal jurisdiction over that defendant with respect to any related state claims in the case. *Id.* If the federal claim is dismissed prior to trial, the court may refuse to assert jurisdiction over the defendant with respect to any remaining state claims. *See Gibbs*, 383 U.S. at 726.

### E. Discussion

#### 1. LubeCenter Sales, Inc.

The Reshes' fourth-party complaint against LubeCenter contains a series of factual allegations, principally contained in paragraphs fourteen through forty-eight, setting out the transactions and roles of various parties that form the basis of the Reshes' claims. These transactions were complex and are set out more fully in the Court's order of January 25, 2013 (ECF No. 109). Relevant here are the factual assertions describing LubeCenter's role in the transactions, its contacts with the Reshes, and its activities relative to West Virginia, the forum state.

First, to establish minimum contacts, the Reshes point out LubeCenter's role in the "first leg" of the transaction between sellers Spaar Management, Inc. ("Spaar") and its affiliate Adventure 2000, LLC ("Adventure"), and Peanut Oil, the purchaser of the West Virginia assets. ECF No. 483. LubeCenter served as a consultant, hired by Spaar and Adventure. Other than the fact that assets located in West Virginia were the subject of the transaction, there is no connection between any of these contracting parties, or LubeCenter, and West Virginia. Furthermore, LubeCenter did not perform any activities in West Virginia.

9

Next the Reshes contend that LubeCenter's role in "furthering" the "second leg" of the transaction, by allegedly providing false financial records and documents used by others in the transaction, constitutes activity in the forum state.   ECF No. 483.   Looking at the specific facts alleged, however, the Reshes do not actually claim that LubeCenter engaged in any activities in West Virginia.   LubeCenter's role was limited to contacts with the other parties, none of whom were West Virginia entities.

The Reshes and Third-Party Defendants only assert a few of the business-contact factors to justify personal jurisdiction, and they are not sustainable.   They argue that LubeCenter's senior manager proposed the idea for the structure of the transaction, compiled financial information, created a business plan for Peanut Oil, and "and assisted in setting the rent amounts for the West Virginia properties."   ECF No. 487.   They do not, however, argue that these activities took place in, or were directed at, West Virginia.   Instead, Third-Party Defendants note that these actions were taken "in the context of" transferring property located in West Virginia.   This is not enough to demonstrate that LubeCenter "reached into the forum" to solicit business.   *See Consulting Eng'rs*, 561 F.3d at 278.

Moreover, LubeCenter did not make "in-person contact with the resident of the forum in the forum state."   *See Consulting Eng'rs*, 561 F.3d at 279.   LubeCenter's client was not a West Virginia business.   LubeCenter merely consulted with a non-West Virginia client about the client's West Virginia assets.   The Reshes point out that LubeCenter also referred other parties to the transaction to Upland.   Referring non-resident businesses to Upland did not amount to reaching into the forum, especially considering that Upland is not a West Virginia business either. Although LubeCenter communicated with the parties and other entities involved in the transaction extensively, none of the communications involved a West Virginia entity.   Communication about

West Virginia properties or businesses is not the same as communications *with* West Virginia entities. *See id.* ("We look to the quality and nature of the contacts in evaluating whether they meet the minimum contacts requirement.").

Third Party Defendants argue that it would be "hard to imagine a business dispute that this Court would be more interested in than a dispute over how multiple professional organizations (including Lube and Upland) and consumers within this state (the Reshes) should conduct themselves in this state." As the Court has already noted, neither LubeCenter, Upland, the Reshes, nor any other party involved in the sale and leaseback transactions, was a West Virginia resident. Only the property itself was actually in the forum state. LubeCenter undertook no contractual duties to be performed in West Virginia or for West Virginia entities. Although Peanut Oil transacted with the Reshes in the second leg of the transaction to sell and lease West Virginia properties, in order to operate businesses in West Virginia, none of Lube Center's activities or contacts took place in West Virginia. In sum, the Reshes and Third-Party Defendants offer no allegations that LubeCenter actually conducted any business in West Virginia or in any other way purposefully availed itself of West Virginia law.

Alternatively, the Reshes argue that even if LubeCenter does not have minimum contacts, LubeCenter was a member of a conspiracy to defraud the Reshes, one or more of its co-conspirators are within the reach of this Court's jurisdiction, and thus LubeCenter is also within the Court's jurisdiction. Despite any one conspirator's absence from the forum, if a co-conspirator is subject to personal jurisdiction as a result of its contacts with the forum, all of the other conspirators are also subject to personal jurisdiction. *See Lolavar*, 430 F.3d at 229. Under this theory, the acts of one conspirator may be imputed to others, including the conspirator's contacts with the forum state. *See id.* To succeed on this theory, the Reshes must make a

11

thorough showing that the conspiracy existed, that LubeCenter was a member of the conspiracy, and that a coconspirator undertook acts in West Virginia to further the conspiracy.   *Unspam*, 716 F.3d at 329.   The Reshes must rely on more than "bare allegations."   *Lolavar*, 430 F.3d at 229.

Here, the Reshes' fourth-party complaint against LubeCenter fails to meet these requirements.   First, although the Reshes specifically allege that certain financial documents and other data that they used during the transaction were false and misleading, they have not alleged any specific facts that demonstrate an actual conspiracy or common plan among LubeCenter and any actors who did business in West Virginia.   *See Unspam* , 716 F.3d at 329-30.   Instead, they state that LubeCenter provided other parties with false information, and then conclude that LubeCenter was at the "core" of a criminal enterprise to defraud real estate purchasers.   *See* ECF No. 405.   Moreover, the Reshes have not alleged that any specific coconspirator performed acts in furtherance of the conspiracy in West Virginia.   LubeCenter consulted with companies outside of West Virginia during the first leg of the transaction and provided financial records and documents that were used by other entities in later transactions with the Reshes.   The fraud alleged by the Reshes occurred in a transaction which took place outside the forum with nonresident parties. Even if these other entities later made minimum contacts with West Virginia sufficient for the Court to exercise of personal jurisdiction over them, due process constraints preclude the exercise of jurisdiction over LubeCenter.   The fourth-party complaint alleges that LubeCenter contacted and worked with Upland, Adventure, Spaar, and Peanut Oil, all of which occurred in other states. The Reshes' complaint further states that the financial information alleged to be fraudulent was provided to the Reshes by Peanut Oil, not by LubeCenter.   ECF No. 405.   The second leg of the transaction may have involved activity directed at West Virginia by Peanut Oil and other parties, but was not directly related to LubeCenter's actions.   At most, the Reshes conspiracy claims show

that LubeCenter was involved in a conspiracy outside of the forum, directed at the Reshes in California.  The alleged conspiracy does not involve the terms of the actual contract or the performance of the contract.  Instead, it involves the appraisals, lease terms, and financial documents that were sent to California, Texas, and other non-forum states for the Reshes to review *before* completing any transactions with Peanut Oil.  That the Reshes later purchased the properties from Peanut Oil in West Virginia and leased the properties back to Peanut Oil in West Virginia does not mean that they can bring LubeCenter into the courts of West Virginia.

Finally, the Reshes argue that the Court may exercise jurisdiction over LubeCenter on their RICO claim, and subsequently assert pendent jurisdiction over LubeCenter on their state claims. They maintain that LubeCenter was one of a number of entities that defrauded the Reshes and other investors in violation of RICO.  RICO provides for nationwide service of process.  The Reshes argue that because they served LubeCenter pursuant to this RICO provision, the Court has jurisdiction over LubeCenter on their RICO claim.  LubeCenter argues that exercising jurisdiction would violate the Due Process Clause of the Fifth Amendment.  The Court acknowledges that LubeCenter is a small company that seemingly had limited involvement in the transactions at issue in this case.  Moreover, LubeCenter was brought into this case two years after it was filed and eight years after the transactions occurred.  The Court does not find, however, that asserting jurisdiction would so unfairly disadvantage LubeCenter as to offend due process.  The Court therefore has personal jurisdiction over LubeCenter with respect to the Reshes' RICO claim found in Count VII of their fourth-party complaint.

Under the theory of pendent jurisdiction, the Court may also assert jurisdiction over LubeCenter with respect to the Reshes' and Third Party-Defendants' state law claims.  As explained in further detail below, however, the Reshes have failed to state a claim under RICO

against LubeCenter.   Without a federal claim to anchor personal jurisdiction over the LubeCenter, the Court declines to assert pendent personal jurisdiction over LubeCenter with respect to the state law claims against it.   For these reasons, LubeCenter Sales, Inc.'s Motion to Dismiss for Absence of Personal Jurisdiction (ECF No. 456) is **GRANTED IN PART** as to all but Count VII of the Reshes' fourth-party complaint.

### 2.   Upland Real Estate Group, Inc.

In their fourth-party complaint, the Reshes allege that Upland advertised the West Virginia lube center properties, misrepresented that Peanut Oil owned the properties before the first leg of the transaction, worked on the appraisals for each of the properties, helped prepare the lease agreements for the properties, provided the Reshes' broker with false information regarding Peanut Oil, and received a fee for the transactions.   ECF No. 405.   The Reshes, and Third-Party Defendants, argue that these activities constitute sufficient minimum contacts with West Virginia to give rise to specific personal jurisdiction.

First, the Reshes and Third-Party Defendants allege that Upland advertised West Virginia properties on a website accessible in West Virginia.   ECF No. 486; ECF No. 487.   They argue that by so listing the properties, Upland reached into the forum.   Listing properties within West Virginia for sale is not enough, by itself, to establish minimum contacts.   There is no allegation that Upland specifically directed its website to West Virginia consumers "with the manifested intent of engaging in business or other interactions within the State."   *See Carefirst*, 334 F.3d 390, 399.   Rather, it appears that the website was directed toward the commercial real estate market generally.   Furthermore, Upland's actions did not directly create "in a person within the State, a potential cause of action cognizable in the State's courts."   *See id.*   If the Reshes' allegations are true, Upland's actions created a cause of action within the Reshes in California, not within any

individual or business residing in West Virginia.   Thus Upland did not make sufficient contact with the forum by placing advertisements for West Virginia real estate on its website.

Next, the Reshes state that over the course of the transaction, Upland sent documents and correspondence to other persons and entities "about the West Virginia transactions" and argue that "it is likely some of these contacts were received in West Virginia."   ECF No. 486.   The Reshes' complaint does not actually allege, however, that Upland sent any documents into the forum or to any residents of West Virginia.   As the Court explained above, that the properties discussed in the documents and correspondence were located within West Virginia's borders is not enough to show purposeful availment of West Virginia law.   *See Consulting Eng'rs*, 561 F.3d at 279.

The Reshes and Third-Party Defendants also point to Upland's role as the broker for Peanut Oil, noting that Upland received a commission on the transaction.   Furthermore, they argue that by working on the property appraisals, helping set the rent prices for the properties, and working with LubeCenter, Upland purposely availed itself of West Virginia's laws.   ECF No. 487.   Neither the Reshes nor Third-Party Defendants allege that these activities occurred in West Virginia.   Moreover, like LubeCenter, Upland allegedly interacted with individuals and businesses residing in Minnesota, California, Texas, and Pennsylvania, but not West Virginia. That Upland was paid for working on a transaction involving West Virginia property is not enough to demonstrate that Upland performed any contractual duties in West Virginia or purposefully reached into the state to conduct business.   *See Consulting Eng'rs*, 561 F.3d at 278.   The Court finds that Upland did not have minimum contacts with the forum sufficient to allow the Court to assert specific personal jurisdiction over the company.

Even if Upland does not have minimum contacts with West Virginia, the Reshes maintain that the conspiracy theory of jurisdiction supports exercising personal jurisdiction over Upland.

As with LubeCenter, the Reshes have not alleged specific facts plausibly indicating that Upland engaged in a common plan, part of which was furthered in West Virginia. That multiple parties contributed to the appraisals and other financial documents, which allegedly contain false information, does not mean that those parties colluded to provide false information for the purpose of defrauding buyers. Moreover, the activities that took place in West Virginia involved a transaction between the Reshes and Peanut Oil and the performance of a contract between those two parties. Based on the allegations in the fourth-party complaints, those activities appear to be separate from the actions that Upland allegedly took before the transaction ever occurred. Without a prima facie case indicating the plausible existence of a conspiracy between Upland, and others, furthered by acts taken in the forum, the Court cannot assert jurisdiction over Upland under the conspiracy theory of jurisdiction.

Finally, the Reshes reiterate with respect to Upland their argument for personal jurisdiction pursuant to RICO and pendent pendant jurisdiction over the state law claims. They maintain that proper service on Upland pursuant to RICO's provision for nationwide service of process is sufficient to confer personal jurisdiction over Upland. Upland has not raised a Fifth Amendment defense to the exercise of personal jurisdiction. Accordingly, the Court has personal jurisdiction over Upland with respect to the Reshes' RICO claim in Count VII of their fourth-party complaint.

As it does with LubeCenter, the Court declines to assert pendent personal jurisdiction over Upland with respect to the state claims against it because, as discussed below, the Court dismisses the Reshes' RICO cause of action for failure to state a claim. Without this federal claim, the Court need not, and will not, assert personal jurisdiction over Upland with respect to the remaining state claims.

Accordingly, Upland Real Estate Group, Inc.'s Motion to Dismiss Defendants/Third-Party

Plaintiffs' Direct Fourth Party Complaint Against Upland Real Estate Group, Inc. (ECF No. 463) is **GRANTED IN PART** as to all but Count VII of the Reshes' fourth-party complaint and Upland Real Estate Group, Inc.'s Motion to Dismiss Fourth Party Complaint of Realty Concepts, Ltd., Fourth Party Complaint of Lawyer's Title Insurance Corporation and Fourth Party Complaint of Helen Sullivan (ECF No. 466) is **GRANTED**.

### III.    Motions to Dismiss for Failure to State a Claim

#### A.  Rule 12(b)(6)

Under Rule 12(b)(6), a federal court must dismiss a claim which "fail[s] to state a claim upon which relief can be granted."   In *Bell Atl. Corp. v. Twombly*, the United States Supreme Court stated that courts must look for "plausibility" in the complaint. 550 U.S. 544, 557-63 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (citation omitted).   Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level." *Id*. (citations omitted).  If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (citations omitted) (internal quotation marks omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail.   The Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations." *Id.* at 678 (citation omitted) (internal quotation marks omitted).   However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient.   *Id*.  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
*Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual
content that allows the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged." *Id.* (citation omitted). The Court further explained that although factual
allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet
does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).
Furthermore, "[i]n alleging fraud or mistake, a party must state with particularity the
circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

### B. Pleading a Claim under RICO

RICO creates a private right of action for a "person injured in his business or property by
reason of a violation of" the statute. 18 U.S.C. § 1964(c) (2012). RICO violations are set out in
Title 18, Section 1962 of the U.S. Code. 18 U.S.C. § 1962 (2012). To make a plausible claim
under RICO, a plaintiff must allege facts that, if accepted as true, demonstrate each element of a
RICO violation. The Reshes have not identified which portion of Section 1962 the fourth-party
defendants allegedly violated, but their claim seems to most closely track Section 1962(c). The
elements of a RICO claim under Section 1962(c) are: "(1) conduct (2) of an enterprise (3) through
a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).
The enterprise must engage in or affect interstate or foreign commerce. 18 U.S.C. § 1962.
RICO defines "racketeering activity" as any one of the predicate offenses enumerated in Section
1961(1) of the statute. Among the possible offenses are mail fraud and wire fraud. 18 U.S.C. §
1961(1)(B) (2012).

A "pattern" of racketeering activity requires at least two predicate racketeering activities.

*Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 151 (4th Cir. 1987).   Two or more predicate acts are

not enough, however, to demonstrate a pattern.   "If the commission of two or more acts to

perpetrate a single fraud were held to satisfy the RICO statute, then every fraud would constitute a

pattern of racketeering activity.   It will be the unusual fraud that does not enlist the mails and

wires in its service at least twice."   *Id.* at 154 (internal quotation marks omitted).   To demonstrate

a pattern, a plaintiff must also allege (1) a relationship between the predicate acts and (2) the

existence of a threat that the racketeering activity will continue.   *H.J. Inc. v. Nw. Bell Tel. Co.*, 492

U.S. 229, 239 (1989).

A relationship between the acts may be shown where they "have the same or similar

purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by

distinguishing characteristics and are not isolated events."   *Id.* at 240 (quoting Dangerous Special

Offender Sentencing Act, 18 U.S.C. § 3575(e) (1982) (repealed 1984)).   The threat of continuity

is harder to prove.   "'Continuity' is both a closed- and open-ended concept, referring either to a

closed period of repeated conduct, or to past conduct that by its nature projects into the future with

a threat of repetition."   *Id.* at 241.   To plead closed-ended continuity, a plaintiff may allege "a

series of related predicates extending over a substantial period of time.   Predicate acts extending

over a few weeks or months and threatening no future criminal conduct do not satisfy this

requirement: Congress was concerned in RICO with long-term criminal conduct."   *Id.* at 242.

To sufficiently plead open-ended continuity, a plaintiff must allege that the racketeering activities

will naturally persist into the future.   *Id.* at 241.   A plaintiff may demonstrate this by alleging

facts indicating that "the racketeering acts themselves include a specific threat of repetition

extending indefinitely into the future" or "by showing that the predicate acts or offenses are part of

an ongoing entity's regular way of doing business."   *Id.*

The relationship and continuity requirements "ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989). "In providing a remedy of treble damages . . . Congress contemplated that only a party engaging in widespread fraud would be subject to such serious consequences." *Id.* "If the pattern requirement has any force whatsoever, it is to prevent . . . ordinary commercial fraud from being transformed into a federal RICO claim." *Id.* at 685. Thus, where a defendant has committed fraud for a limited purpose, against a limited number victims, its actions will rarely constitute a RICO violation. *See id.* (holding that plaintiffs failed to allege RICO violation where defendant only sought to defraud two companies and fraud took place over one year); *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (holding that plaintiffs failed to state RICO claim where defendants used Ponzi scheme over seventeen months to defraud investors by convincing them that a single business was financially successful when it was not); *Thompson v. Paasche*, 950 F.2d 306, 311 (6th Cir. 1991) (holding that plaintiffs failed to prove either open- or closed-ended continuity where defendant committed fraud in the sale of nineteen real estate lots over a period of several months). Rather, "RICO treatment is reserved for conduct 'whose scope and persistence pose a special threat to social well-being.'" *GE Inv.*, 247 F.3d at 551 (quoting *Menasco*, 886 F.2d at 684); *see H.J.*, 492 U.S. at 229 (holding that plaintiffs stated a claim under RICO because predicate acts occurring over a six-year period involving bribes to five different public utility commissioners "may be sufficient to satisfy the continuity requirement").

### C.  Pleading Mail and Wire Fraud

In order to plead the "racketeering activity" element of a RICO claim, a plaintiff must sufficiently plead predicate acts. Here, the predicate acts that the Fourth-Party Defendants

allegedly committed are instances of mail and wire fraud.   To plead mail or wire fraud, a plaintiff

must allege "that the defendant (1) devised or intended to devise a scheme to defraud," (2) used a

"mail or wire communication in furtherance of the scheme," *United States v. Wynn*, 684 F.3d 473,

477 (4th Cir. 2012), and (3) "acted with the specific intent to defraud," *United States v. Goodwin*,

272 F.3d 659, 666 (4th Cir. 2001).

To successfully plead a fraud claim in a business transaction, a plaintiff must "show more

than a business deal gone bad for economic and non-fraudulent reasons."   *Eclectic Props. E., LLC*

*v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).   As the U.S. Court of Appeals for

the Ninth Circuit recently explained:

> When companies engage in sale-leaseback transactions that are facially legitimate,
> pay rent and operate legitimate businesses for years thereafter, and otherwise act as
> routine participants in American commerce, a significant level of factual specificity
> is required to allow a court to infer reasonably that such conduct is plausibly part of
> a fraudulent scheme.

*Id.* at 997-98.   In *Eclectic Properties*, the defendants "sold property worth $11.1 million to

Plaintiffs for $30.3 million while spending $8.1 million on rent to maintain the alleged scheme

until all properties were sold."   *Id.* at 998.   Plaintiffs argued that the rapid increase in price and

the defendants' representation of the properties as "safe" investments demonstrated fraudulent

intent.   The court found that the plaintiffs failed to state a claim under RICO predicated on mail

and wire fraud for two reasons.   First, although the facts were consistent with fraudulent intent on

the part of the defendants, they were also consistent with an innocent explanation, given "that real

estate values can be variable, and that fluctuations in prices over a period of years are not

necessarily unusual, nor are they conclusive proof of wrong-doing, as changes may reflect market

conditions."   *Id.*   Second, the Court found the plaintiffs' allegations regarding the actual value of

the property insufficient.   *Id.* at 999.   Given these deficiencies, the Court held that the plaintiffs

failed to sufficiently allege a specific intent to defraud and affirmed dismissal of their RICO claim. The court in *Eclectic Properties* made it clear that a plaintiff must plead sufficient facts to demonstrate scienter in order to properly state a claim for mail or wire fraud.

### D. Discussion

In their fourth-party complaint, the Reshes allege that LubeCenter, Michael Baynes, and Upland were part of an enterprise "that sought financial gain through the systematic defrauding of Defendants and similarly situated real estate investors."  The Reshes accuse LubeCenter and Upland of convincing investors "to purchase real estate at exorbitant prices, based on intentionally flawed and excessive appraisals, thereby causing financial gain to the enterprises' participants." The Reshes allege that the fourth-party defendants intentionally failed to disclose: defective appraisals, "[t]he insufficiency of the Peanut Oil leases as bases upon which to value the properties," the comparables that the Reshes allege skewed the appraisals, Peanut Oil's lack of creditworthiness, conflicts of interest, "[t]he fact that Peanut Oil had no intention of fulfilling its obligations on the underlying leases," and the fact that the transaction was a "double-escrow" transaction through which Peanut Oil would purchase the properties before selling them to the Reshes and leasing them back.

With respect to LubeCenter, the Reshes allege that it participated in the scheme to defraud by compiling "false or misleading information about Peanut Oil" and hiding "the fraudulent natures of the transactions in a pre-closing letter sent via facsimile and/or through the mail."  ECF No. 405.  The Reshes allege that Upland furthered the fraudulent scheme by "obtaining skewed comparables to submit to the appraiser via e-mail and over state lines" and "submitt[ing] false or misleading financial information about Pearson, Peanut Oil and the West Virginia properties over the internet and through the mail."  They also allege that Upland used a referral fee agreement to

22

"contribute[] to the ruse that that Brosnac and Realty Concepters were properly licensed in West Virginia."   ECF No. 405.

The Reshes maintain that the fourth-party defendants were "motivated by the desire to facilitate the fraud and reap the gains associated therewith[,] . . . derived income from each of the three transactions they participated in, and used that income in furtherance of their businesses and in interstate commerce."   ECF No. 405.   The Reshes also allege that "similar schemes have been perpetrated as part of Defendants' acquisition of commercial properties in North Carolina, including a property in Franklin, as well as properties in Sheridan, Wyoming and in the Pennsylvania transaction."   Finally, the Reshes maintain that the alleged scheme injured their business and property, including "loss of investment capital; loss of out-of-pocket expenses; lost profits; loss of goodwill; and loss of creditworthiness."   ECF No. 405.

To make a claim under RICO, the Reshes must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."   *Sedima*, 473 U.S. at 496.   The Reshes have satisfied the first two elements, alleging that LubeCenter, Upland, and Michael Banes acted in concert to defraud investors over state lines.   The third and fourth elements require a closer inspection of the Reshes' allegations regarding the fourth-party defendants' predicate racketeering activities.

Although not explicitly cited, the Reshes appear to base their RICO claims on predicate violations of the mail and wire fraud statutes, U.S. Code Title 18 Sections 1341 and1343.   The Court finds that the Reshes have alleged sufficient facts to satisfy the first two elements of mail and wire fraud: a scheme to defraud and the use of mail or wire communications to further that scheme.   The Reshes allege that LubeCenter and Upland used mail and e-mail to communicate false financial information regarding Peanut Oil.   They also allege that Upland submitted

23

misleading comparables "via e-mail and over state lines."   According to the Reshes, this false information was sent in order to convince them to purchase over-priced properties and rent them at "unsustainable" rates.   These facts, if taken as true, demonstrate a scheme to defraud the Reshes and the use of mail and e-mail to further the scheme.

Whether the Reshes have sufficiently pleaded the third element—fraudulent intent—is a closer question.   The Reshes allege that the fourth-party defendants collaborated to sell the properties at fraudulently inflated prices and with inflated rents in order to further their own financial gain.   As the Ninth Circuit explained in *Eclectic Properties*, however, they must show that this was more than just an unsuccessful sale-leaseback investment caused by fluctuations in the market.   *See Eclectic Props.*, 751 F.3d at 997.   On the one hand, the Reshes have alleged that Upland and LubeCenter sent all of the financial information at issue to the Reshes' agent, Brosnac, who "held back alarming portions of the financial records until after the close of the transaction to avoid any potential notice to the Defendants that something was wrong."   This allegation can be interpreted to mean that Upland and LubeCenter made full disclosures of the financial information, but that Brosnac wrongfully withheld it from his clients.   If this is true, Upland and LubeCenter were innocent in any fraudulent concealment.   On the other hand, the Reshes also allege that the appraiser sent Upland a memorandum expressing concern over the inaccurate data submitted for the appraisal, and that LubeCenter was aware of this memorandum.   The Reshes also claim that Upland, LubeCenter, and Peanut Oil worked together to prepare the leases and set the proposed rent prices for the properties.   These allegations, if taken as true, are sufficient to demonstrate that the fourth-party defendants may have had fraudulent intent.   The Reshes have thus alleged enough facts to state a plausible claim under the mail and wire fraud statutes.

Finally, the Court must determine whether the Reshes have adequately alleged a "pattern"

of racketeering activity.  The Court finds that they have not.  A pattern requires both a relationship and continuity.  There is clearly a relationship between the alleged predicate acts: they were all committed in order to convince the Reshes to purchase the properties at specific prices and lease them back to Peanut Oil at specific rates.  The Reshes have failed, however, to allege continuity.  First, the conduct here is not enough to meet the standard for closed-ended continuity.  As the Supreme Court explained in *H.J.*, "Congress was concerned in RICO with long-term criminal conduct," not actions spanning just a few months.  *H.J.*, 492 U.S. at 242.  In *GE Investment*, the Fourth Circuit held that a single Ponzi scheme targeting multiple investors and lasting seventeen months did not meet RICO's continuity requirement.  *GE Inv.*, 247 F.3d at 549.  Likewise, in *Menasco*, the Fourth Circuit held that the continuity requirement was not satisfied where a defendant schemed to defraud two victims over the course of one year.  *Menasco*, 886 F.2d at 685.  Here, all of the predicate acts that the Reshes allege contributed to the fraudulent scheme occurred in one year, with respect to three properties sold from the same seller to the same buyers.[1]  This is not the kind of "widespread fraud" that indicates closed-ended continuity and justifies the harsh treble damages available under RICO.  *See id.* at 683.

Moreover, the Reshes have not alleged sufficient facts to demonstrate open-ended continuity.  Nothing indicates that the alleged racketeering activity in this case, by its very nature, threatens to continue indefinitely.  The alleged activity here involves a few discreet acts of mailing or emailing specific documents.  Furthermore, the Reshes have not alleged any specific facts to indicate that these predicate acts are LubeCenter or Upland's "regular way of doing

---

[1] The Reshes complaint also states that the fourth-party defendants committed similar schemes aimed at other investors, and at the Defendants, in North Carolina, Wyoming, and Pennsylvania. These broad allegations are not specific enough to meet the pleading standards of Rule 9.  *See* Fed. R. Civ. P. 9(b).  The Court looks only to the sufficiently pleaded predicate acts to determine whether a pattern exists.

business."   As the court in *Zepkin* explained: "It will be the unusual fraud that does not enlist the mails and wires in its service at least twice."   *Zepkin*, 812 F.2d at 151.   Multiple mailings or e-mails are simply not enough to show a pattern of racketeering activity, particularly where each of those actions contribute to a single fraudulent goal: to sell a set of properties from one seller to one set of buyers at an unjustified price.   The Reshes have not specifically alleged any other instances of fraud.   This case exemplifies the Fourth Circuit's concern in *Manasco* that "ordinary commercial fraud" might be turned into a RICO claim absent an actual pattern of consistent fraudulent activity.   Accordingly, the Court finds that the Reshes have not demonstrated a pattern and have thus failed state a claim under RICO.

Given this conclusion, the Court need not address the remaining state claims under Rule 12(b)(6).   The Court has dismissed the only federal claim in this case, which anchored personal jurisdiction over the fourth-party defendants.   As explained in the preceding section, the Court has no independent basis to assert personal jurisdiction over the fourth-party defendants with respect to the state claims and declines to exercise pendant personal jurisdiction over them.

Accordingly, LubeCenter Sales, Inc.'s Motion to Dismiss the Purported Direct Fourth Party Complaint Filed by Defendants/Third-Party Plaintiffs Ron Resh and Valarie Reynolds-Resh Pursuant to Rule 12(b)(6) (ECF No. 462) is **GRANTED IN PART** with respect to Count VII of the Reshes' fourth-party complaint and Upland Real Estate Group, Inc.'s Motion to Dismiss Defendants/Third-Party Plaintiffs' Direct Fourth Party Complaint Against Upland Real Estate Group, Inc. (ECF No. 463) is **GRANTED IN PART** with respect to Count VII of the Reshes' fourth-party complaint.

## IV.    Remaining Motions

As a result of the Court's holding, the remaining motions by LubeCenter and Upland are

**DENIED AS MOOT** (ECF Nos. 460, 468, & 470).   Further, the joint motion by Lawyer's Title Insurance Corporation, Helen Sullivan, and Realty Concepts, Ltd. to Dismiss or Strike Fourth Party Complaint is **GRANTED**, in so far as it seeks to strike the Reshes' Fourth-Party Complaint. The Court finds it unnecessary to determine whether the Reshes' Fourth-Party Complaint amended the Third-Party Complaint or was improperly filed without leave.   The parties named in the Fourth-Party Complaint have now been dismissed; as such the Reshes' Fourth-Party Complaint (ECF No. 405) is **STRICKEN** in its entirety.   For the same reason, Lawyer's Title Insurance Corporation's Fourth-Party Complaint (ECF No. 404), Helen Sullivan's Fourth-Party Complaint (ECF No. 407), and Realty Concepts, Ltd.'s Fourth-Party Complaint (contained within ECF No. 399) are **STRICKEN**.

### Conclusion

For the foregoing reasons, Lawyer's Title Insurance Corporation, Helen Sullivan, and Realty Concepts, Ltd.'s Joint Motion to Dismiss or Strike Fourth Party Complaint (ECF No. 423) is **GRANTED**, LubeCenter Sales, Inc.'s Motion to Dismiss for Absence of Personal Jurisdiction (ECF No. 456) is **GRANTED**, Upland Real Estate Group, Inc.'s Motion to Strike Direct Fourth Party Complaint Against Upland Real Estate Group, Inc. Pursuant to Rule 14(a)(3) (ECF No. 460) is **DENIED AS MOOT**, LubeCenter Sales, Inc.'s Motion to Dismiss the Purported Direct Fourth Party Complaint Filed by Defendants/Third-Party Plaintiffs Ron Resh and Valarie Reynolds-Resh Pursuant to Rule 12(b)(6) (ECF No. 462) is **GRANTED IN PART**, Upland Real Estate Group, Inc.'s Motion to Dismiss Defendants/Third-Party Plaintiffs' Direct Fourth Party Complaint Against Upland Real Estate Group, Inc. (ECF No. 463) is **GRANTED IN PART**, Upland Real Estate Group, Inc.'s Motion to Dismiss Fourth Party Complaint of Realty Concepts, Ltd., Fourth Party Complaint of Lawyer's Title Insurance Corporation and Fourth Party Complaint of Helen

Sullivan (ECF No. 466) is **GRANTED**, LubeCenter Sales, Inc.'s Motion to Dismiss Fourth Party Complaint of Realty Concepts, Ltd., Fourth Party Complaint of Lawyer's Title Insurance Corporation and Fourth Party Complaint of Helen Sullivan (ECF No. 468) is **DENIED AS MOOT**, and Upland Real Estate Group, Inc.'s Motion to Reconsider Order Granting Consent Motion to Amend Third-Party Answer for Sole Purpose of Filing Fourth Party Complaint and to Strike Complaints (ECF No. 470) is **DENIED AS MOOT**.  The fourth-party complaints are **STRICKEN** (ECF Nos. 399, 404, 405, & 407) and LubeCenter Sales, Inc. and Upland Real Estate Group, Inc. are dismissed from this matter.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:         August 12, 2015

_____
ROBERT C. CHAMBERS, CHIEF JUDGE