## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT HUNTINGTON

**HSBC BANK USA, NATIONAL ASSOCIATION,**
Solely as Indenture Trustee, etc.

Plaintiff,

v.                                            Civil Action No. 3:12-cv-00668

**RON RESH** and **VALARIE REYNOLDS-RESH,** *etc.*,

Defendants/Third-Party Plaintiffs,

v.

**REALTY CONCEPTS, LTD.; ANDREW BROSNAC;**
**LAWYER'S TITLE INSURANCE CORPORATION;**
and **HELEN SULLIVAN,**

Third-Party Defendants.

## MEMORANDUM IN SUPPORT OF
## MOTION TO STRIKE SHAM AFFIDAVIT

**COMES NOW** the Plaintiff ("HSBC") and submits this memorandum in support of its

**Motion to Strike Sham Affidavit** [ECF 594].   For the reasons set forth herein, HSBC asserts

that the Court should strike the Affidavit of J.D. Koontz, who is the Defendants' "banking

expert."

## I. RELEVANT FACTS

The Defendants retained J.D. Koontz "as an expert witness on banking practices and

procedures." Koontz Report [ECF 557-39] at 1, Koontz Tr. (Exhibit A) at 7:7-8.  Mr. Koontz

was deposed on June 23, 2014.  On December 3, 2015, an affidavit ("the Affidavit") signed the day before by Mr. Koontz, was submitted as Exhibit 31 [ECF 557-38] to the Defendants' Opposition [ECF 557] to HSBC's Motion for Summary Judgment [ECF 539].  Portions of the Affidavit directly contradict, and present a *bona fide* inconsistency with, the deposition testimony elicited from Mr. Koontz in June 2014.  Such *bona fide* inconsistencies render the Affidavit a "sham affidavit."

## II. ARGUMENT

The Affidavit Should be Stricken Because it is a "Sham Affidavit"

"At the summary judgment stage, if an affidavit is inconsistent with the affiant's prior deposition testimony, courts may disregard the affidavit pursuant to the sham-affidavit rule." *Kinser v. United Methodist Agency for the Retarded--Western North Carolina, Inc.*, 613 Fed. Appx. 209, 210 (4th Cir. 2015) (citations omitted).  Whenever there is a *bona fide* inconsistency, the sham-affidavit rule applies.  *Id*. (citing *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 n. 7 (4th Cir. 2001)).  Here, there are *bona fide* inconsistencies between the deposition testimony of the J.D. Koontz taken in June of 2014, and the Affidavit filed at the summary judgment in December of 2015.  Accordingly, the Affidavit is a "sham affidavit" and it should be stricken.

### The First *Bona Fide* Inconsistency

In the Amended Counterclaim the Defendants claimed that by not attending the closing, the Bank breached some duty owed to the Defendants:  "BLX Capital's failure to have a representative at the closing . . . was negligent, violated duties of good faith and fair dealing, and allowed the fraud to be completed."  Amended Counterclaim [ECF 20] at 20 ¶ 91, and ¶¶ 88 and

90.  However, under West Virginia law a lender is under no common law or statutory duty to attend closing.[1]  Thus, any *duty to attend closing* must necessarily have arisen from one of the loan "documents [which] created a contractual agreement between the parties."  *Id.* at 29 ¶ 140. For this reason, HSBC's counsel specifically questioned Mr. Koontz as to any obligation imposed by the loan documents in these transactions[2]:

> Q.    Did you find anything in the written documents that you reviewed that set forth an obligation on behalf of the lender that the lender did not perform?
>
> A.    No.

Exhibit A, J.D. Koontz Tr. at 126:21-24.

> Q.    . . . I think you said this just a minute ago, as far as the duties that the bank agreed to in the written documents from your review**,** it fulfilled all those duties, correct?
>
> A.    Yes**.**

Koontz Tr. at 129:2-6.

Mr. Koontz was quite clear on the point when he testified under oath at his deposition in June of 2014: the Bank performed all obligations imposed by the loan documents.  But now, eighteen months later and in the summary judgment phase, Mr. Koontz is trying to change his story.  Now, Mr. Koontz states in the Affidavit that one of the loan documents *did* impose a duty that the Bank failed to perform.  Now, Mr. Koontz claims that the Bank "made representations to the Reshes in its commitment letters that [it . . .] would undertake to supervise the closing of the

---

[1]    Mr. Koontz even admitted that his bank was not always represented at closings of loans that he originated when he was a bank loan officer.  *See* Koontz Tr. at 119:11–121:13.

[2]    In Exhibit D of his Report, Mr. Koontz discloses that he reviewed a total of 290 documents related to the subject loans, including the Commitment Letters.  *See* Koontz Report [ECF 557-39] at Exhibit D; *see also* Koontz Tr. at 124:24-125:2.

transactions." The Affidavit [ECF 557-38] ¶ 17. This is a *bona fide* inconsistency that brings the sham-affidavit rule into play.

### The Second *Bona Fide* Inconsistency

Although never actually alleged by the Defendants, much of the Defendants' case depends on the existence of a "special relationship" between the Bank and the borrowers, which were the Living Trusts. This Court has repeatedly stated that in the lender-borrower context, a "special relationship" is formed "when a lender has *performed services not normally provided by a lender to a borrower*." *Daniels v. JP Morgan Chase & Co*., 2011 WL 2489938 *3 (S.D.W.Va. June 21, 2011) (emphasis added) (citing *Glascock v. City National Bank of West Virginia,* 576 S.E.2d 540 (W.Va. 2002)); *see also Koontz v. Wells Fargo, N.A*., 2011 WL 1297519 *11 (S.D.W.Va. Mar. 31 2011) ("courts consider whether the lender has created such a 'special relationship' by performing services not normally provided by a lender to a borrower.")

In light of this standard, HSBC's counsel made specific inquiry as to whether the Bank in this case had performed services not normally provided by a lender to a borrower:

> Q:    Did BLX [(the bank)] engage in any activity with respect to this borrower that was outside the normal lender/borrower relationship?
>
> A:    I think that BLX did less than what I would come to expect with a borrower and  a customer.
>
> Q:    Okay, BLX did less than what you would expect, not more than would  be expected of the average lender?
>
> A:    That is correct. They did less than what I would expect.

Koontz Tr. at 71:14-22.

Now, at the summary judgment phase, Mr. Koontz is attempting to rewrite his testimony on this point as well. Pointing to the same language of the Commitment Letters that he now claims

imposed an obligation on the Bank to supervise the closing, Mr. Koontz also claims that "the usage of such language or assurances is not normal or customary in banking and lending practices, and could possibly be inferred as creating a special duty or assurance outside of that which is normally present." The Affidavit [ECF 557-38] at 4 ¶ 18.  This too is a *bona fide* inconsistency that subjects the Affidavit to the sham affidavit rule.

## III. CONCLUSION

Because the above-noted *bona fide* inconsistencies exist between J.D. Koontz's deposition testimony and the Affidavit, this Court should grant the HSBC's motion and strike the Affidavit under the sham affidavit rule.

Respectfully submitted,

**HSBC BANK USA,**
**NATIONAL ASSOCIATION,**
*Solely as Indenture Trustee*

By Counsel

___ */s/ W. Bradley Sorrells* ___
W. Bradley Sorrells (WV 4991)
Robinson & McElwee PLLC
Post Office Box 1791
Charleston, West Virginia 25326
(304) 347-8343

5

## CERTIFICATE OF SERVICE

I, W. Bradley Sorrells hereby certify that on this 20TH day of January, 2016, a true and correct copy of the foregoing **Memorandum in Support of Plaintiff's Motion to Strike Sham Affidavit** was served upon all counsel of record in this case through the Court's CM/ECF system.

*/s/ W. Bradley Sorrells*
W. Bradley Sorrells (WV 4991)