IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

HSBC BANK USA,
NATIONAL ASSOCIATION,

           Plaintiff,

v.                                   CIVIL ACTION NO. 3:12-cv-00668

RON RESH and
VALARIE REYNOLDS-RESH,

           Defendants; Counter Claimants;
           and Third Party Plaintiffs,

v.

REALTY CONCEPTS, LTD,

           Cross Claimant,

*and*

ANDREW BROSNAC,

           Third Party Defendant and Cross Defendant.

**MEMORANDUM OPINION AND ORDER**

      Pending before the Court are Defendants/Third Party Plaintiffs/Fourth Party Plaintiffs Ron Resh and Valarie Reynolds-Resh's ("the Reshes") Motions to Alter or Amend Under Rule 59 From Final Judgment Against Plaintiff HSBC Bank USA ("HSBC Bank"), Third Party Defendants Helen Sullivan and Lawyer's Title Insurance Corporation ("Lawyer's Title"), and Fourth Party Defendants Upland Real Estate Group, Inc. ("Upland") and LubeCenter Sales, Inc.

("LubeCenter"). ECF Nos. 683, 685, 687. For the reasons set forth below, these Motions are **DENIED**.

## I. Background and Procedural History

All parties against whom the Reshes bring their Motions to alter or amend judgment under Federal Rule of Civil Procedure 59 either have been previously dismissed from this case or were granted summary judgment in their favor. On August 12, 2015, the Court issued a Memorandum Opinion and Order granting Upland and LubeCenter's motions to dismiss, ECF No. 506, and on February 8, 2016[1] and February 12, 2016, respectively, the Court issued Memorandum Opinions and Orders granting summary judgment in favor of HSBC Bank, Helen Sullivan, and Lawyer's Title, ECF Nos. 649, 660. On March 1, 2016, the Court entered a Judgment Order regarding its award of summary judgment to Helen Sullivan and Lawyer's Title. ECF No. 664. However, upon the Reshes' request for clarification of the Order, the Court vacated the Judgment Order on March 29, 2016, indicating that "due to the complicated procedural posture of this case, the Court intends to enter an all-encompassing, final judgment order . . . at the conclusion of this matter." ECF No. 674. Then on April 4, 2016, the Court entered an all-encompassing Final Judgment Order, ECF No. 677, from which the Reshes file their Federal Rule of Civil Procedure 59(e) Motions.

## II. Legal Standard

"In general 'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quoting 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2810.1 (2d ed. 1995)). The Fourth Circuit has recognized three grounds upon which it would be proper for a Court

---

[1] The Memorandum Opinion and Order entered on February 8, 2016 is an Amended Memorandum Opinion and Order, correcting a few minor errors from the Court's Memorandum Opinion and Order entered on February 5, 2016, ECF No. 639.

to amend a prior judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent injustice." *Id.* It is improper, however, to use Rule 59(e) motions to "re-lititgate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n. 5 (2008) (quoting Wright et al., §2810.1).

The Reshes argue that their Rule 59(e) Motions are proper "to accommodate an intervening change in controlling law" or to correct "clear errors of law" in several of the Court's previous Memorandum Opinions and Orders.

### III. Discussion

To begin, the Court notes that the Reshes recycle previously raised arguments in their Rule 59 Motions and appear only to disagree with the Court's prior findings. As stated previously, it is not proper to use Rule 59 motions as a method to re-litigate old matters. In fact, using Rule 59 motions for this reason alone is, on its own, proper grounds for denial. *See Fox v. Am. Airlines, Inc.*, 295 F. Supp. 2d 56, 60 (D.D.C. 2003) (internal citation omitted) ("The plaintiffs' reassertion of legal arguments made in the original opposition to the defendant's motion to dismiss merely constitutes an inappropriate attempt to reargue the defendant's initial motion and does not form a proper basis for reconsideration. Accordingly, the court denies the plaintiffs' motion to alter or amend judgment.").

Additionally, in regard to all three Motions, the Reshes attempt to enter new, yet largely duplicative, evidence, and in some instances additional arguments, into the record. With regard to any new arguments, the Fourth Circuit has held that "Rule 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the

first instance." *Pac. Ins. Co.*, 148 F.3d at 403. As such, any new arguments raised by the Reshes will not be addressed or considered. *See Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001) (internal citation omitted) ("A district court does not abuse its discretion when it disregards legal arguments made for the first time on a motion to amend . . . .").

With regard to new evidence, the Fourth Circuit has held that the consideration of new evidence in a Rule 59 motion is only proper "as long as the party provides justification for why the evidence was not presented previously." *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007).[2] *See Zimmerman*, 255 F.3d at 740 ("[A] party that fails to introduce facts in a motion or opposition cannot introduce them later in a motion to amend by claiming that they constitute 'newly discovered evidence' unless they were previously unavailable."). Here, this case was filed over four years ago and all parties participated in lengthy, extensive discovery. The Reshes provide no reason as to why any additional evidence introduced in their Rule 59 Motions could not have been provided in the previous four years and four months that this case has been active before this Court. As such, this additional evidence, largely duplicative in nature, will not be considered.[3]

---

[2] More specifically, the Fourth Circuit stated:
> To this end, the court, of necessity, has some discretion to determine whether additional evidence should be considered or further argument heard. If the court elects to look at additional evidence represented as having been unavailable at the prior hearing, the court must satisfy itself as to the unavailability of the evidence and likewise examine the justification for its omission. *See RGI, Inc. v. Unified Indus., Inc.*, 963 F.2d 658, 662 (4th Cir. 1992) (concluding that a district court can accept new evidence under Rule 59(e) as long as the party provides justification for why the evidence was not presented previously).

*Id.*

[3] Any cases relied on by the Reshes that were issued after the Final Judgment Order was entered in this case will be discussed by the Court if they are contested by the parties or are in any way dispositive to this action.

That said, the Court will briefly address the Reshes' arguments below, to the extent the Reshes argue that the Court's findings were "clear errors of law" or warrant reconsideration "to accommodate an intervening change in controlling law."

1. <u>Rule 59 Motion against Upland and LubeCenter</u>

After careful review of the Reshes' Motion to amend or alter judgment against Upland and LubeCenter, the Court concludes that the Motion does nothing more than attempt to re-litigate arguments previously raised in response to Upland and LubeCenter's Motions to Dismiss, ECF Nos. 482, 486. Therefore, as a full and complete response to the Reshes' arguments in their Rule 59 Motion, the Court incorporates the entirety of its analysis from its Memorandum Opinion and Order entered on August 12, 2015, ECF No. 506.

The only proper Rule 59 argument made by the Reshes is their contention that *State ex rel Ford Motor Co. v. McGraw*, No. 15-1149, 2016 WL 2953973 (W. Va. May 18, 2016) provides new law on the issue of personal jurisdiction that warrants reconsideration of the Court's prior dismissal of LubeCenter and Upland. Although properly raised, the Court does not find that *Ford* has any effect on its previous ruling. First, this case is distinguished from *Ford* because, in *Ford*, the Supreme Court of Appeals of West Virginia found there was insufficient evidence of record to determine whether Ford was subject to personal jurisdiction. *Id.* at *29. This is because the trial court denied Ford's motion to dismiss, and subsequently entered an Order Setting Forth Findings of Fact and Conclusions of Law, without providing an opportunity for the plaintiff to respond to the initial motion. *Id.* at *3–4. As such, the West Virginia Supreme Court of Appeals held that there was an insufficient record for the trial court to base its ruling. *Id.* at *29. This is in stark contrast to the case here, where all parties fully briefed their arguments regarding Upland and

5

LubeCenter's motions to dismiss, provided exhibits in support their positions, and had conducted considerable discovery before the Reshes even filed their Fourth Party Complaint.

Second, the discussion in *Ford* was largely based on a stream of commerce analysis in the context of personal jurisdiction, *id.* at *17–28, an analysis largely unrelated and having little consequence on the personal jurisdiction arguments made here. Finally, in addition to the distinctions listed above, the Court notes that *Ford* offered no substantive change or new legal analysis that this Court did not thoroughly address in its August 12, 2015 Memorandum Opinion and Order, ECF No. 506. As such, the Court finds that the Reshes' argument and reliance on *Ford* for the contention that this Court's previous rulings must be reconsidered is misguided. For these reasons, as well as the findings incorporated from the Court's August 12, 2015 Memorandum Opinion and Order, ECF No. 506, the Reshes' Rule 59 Motion to Alter or Amend Judgment with respect to Upland and LubeCenter, ECF No. 683, is **DENIED**.

    2. <u>Rule 59 Motion against Helen Sullivan and Lawyer's Title</u>

After careful review of the Reshes' Motion to amend or alter judgment against Helen Sullivan and Lawyer's Title, the Court again concludes that the Motion does nothing more than attempt to re-litigate arguments previously raised in response Helen Sullivan and Lawyer's Title's Motion for Summary Judgment, ECF No. 555. Therefore, as a full and complete response to the Reshes' arguments in their Rule 59 Motion, the Court incorporates the entirety of its analysis from its Memorandum Opinion and Order entered on February 12, 2016, ECF No. 660.

The only "clear error of law" allegation that has not been previously addressed by the Court is the Reshes' contention that the Court failed to construe evidence in favor of the non-moving party—in the instance of this summary judgment motion, the Reshes. The Court finds this argument without merit. While it is true that at the summary judgment stage of litigation, the Court

will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), it is also true that the nonmoving party must nonetheless offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Additionally, summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Here, although the Reshes provide some evidence and expert opinions to corroborate their arguments, their contentions ignore several uncontested facts from which a reasonable juror could not return a verdict in their favor. The following facts, summarized here and explained further by the Court in its February 12, 2016 Memorandum Opinion and Order, ECF No. 660, preclude the Reshes from sufficiently establishing that Helen Sullivan and Lawyer's Title were liable for fraudulent misrepresentation, fraudulent concealment, breach of duty of good faith and fair dealing, negligent misrepresentation, negligence, unjust enrichment, and RICO violations.

First, contrary to the Reshes' argument, the nature of the double escrow and sale-leaseback was clearly presented to Mr. Resh on numerous occasions. *Third Party Defs.' Mot. for Summ. J.* Ex. 1, at 79–80, 107–108, ECF No. 538 (deposition testimony of Mr. Resh where he admits to signing both the Real Estate Sale Agreement (the "Agreement") and the April 10, 2006 amendment to the Agreement); *id.* Ex. 3 (Agreement); *id.* Ex. 4 (April 10, 2006 amendment to the Agreement). Specifically, the Agreement, which Mr. Resh admits signing, *id.* Ex. 1, at 107–108, in December 2005, states, in pertinent part, that Peanut Oil as Seller:

[I]s the **contract purchaser** with regard to certain **real estate** . . . .

7

> [H]ereby discloses to Purchaser and Purchaser hereby acknowledges that Seller, or an entity owned or controlled by Seller, **is the contract purchaser of the Property under an Asset Purchase Agreement (the "APA") with Adventure 2000, LLC et al. ("the Owner")** and intends to complete the purchase of the Property on or before January 30, 2006 (the "APA Closing Date").

*Id.* Ex. 3, at 1 (emphasis added). Additionally, the April 10, 2006 amendment to the Real Estate Sale Agreement, which Mr. Resh also admits signing, *id.* Ex. 1, at 79–80, states:

> As you know the parties met today, via conference call, along with Michael Baynes of Lube Center Sales to agree upon certain changes to the existing agreement where Mr. Pearson's entity would acquire assets from Mr. Spaar's entities and in change [sic] **to a sale/leaseback of those assets with Mr. Resh's entity**.

*Id.* Ex. 4 (emphasis added). Under West Virginia law, even if Mr. Resh had been previously unaware of the contract terms, "in the absence of extraordinary circumstances, the failure to read a contract before signing it, does not excuse a person from being bound by its terms." *Sedlock v. Moyle*, 668 S.E.2d 176, 180 (W. Va. 2008) (quoting *Reddy v. Cmty. Health Found. of Man*, 298 S.E.2d 906, 910 (W. Va. 1982)).[4] The language in the Agreement and the amendment to the Agreement, both of which Mr. Resh admits signing, clearly and unambiguously describe the nature of the transaction.[5] Therefore, as a matter of law, the Reshes knew about the double escrow nature

---

[4] Additionally, regarding the Reshes' allegations of misleading statements prior to the Agreement being signed, the West Virginia Supreme Court of Appeals has held:
> Where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them. Therefore, if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence.

*Costello v. Larsen*, 29 S.E.2d 856, 858 (W.Va. 1944).

[5] "A contract [term] is ambiguous when it is reasonably susceptible to more than one meaning in light of the surrounding circumstance and after applying the established rules of construction." *Fraternal Order of Police, Lodge No. 69 v. City of Fairmont*, 468 S.E.2d 712, 716 (W. Va. 1996) (quoting *Williams v. Precision Coil, Inc.*, 459 S.E.2d 329, 342 n. 23 (W. Va. 1995)). The terms used in the Agreement and the amendment to the Agreement are not reasonably susceptible to any other meaning.

of the transaction before Ms. Sullivan became involved as the escrow agent and before the closings took place on April 28, 2006, *Third Party Pls.' Resp. to Third Party Defs.' Mot. for Summ. J.* Ex. 7, ECF No. 555.

Second, as stated in the previous paragraph, Ms. Sullivan only became involved <u>after</u> the Agreement had already been executed by the Reshes. The Agreement was signed and executed by Peanut Oil, LLC and Mr. Resh on December 12, 2005. *Third Party Defs.' Mot. for Summ. J.* Ex. 3, at 1, ECF No. 538. Based on the evidence presented to the Court, Ms. Sullivan did not become involved as the escrow agent until at least several weeks later. *Third Party Pls.' Resp. to Third Party Defs.' Mot. for Summ. J.* Ex. 8, ECF No. 555. In other words, the allegedly fraudulent misrepresentations made by Andrew Brosnac, the Reshes' broker, that, according to Mr. Resh, induced the Reshes into signing the Agreement, had already occurred before Ms. Sullivan entered the picture.

Finally, the Reshes point to no legal authority which imposes a duty on Ms. Sullivan, as an escrow agent, to disclose the double escrow nature of a transaction or to explain how financing was to be arranged.[6] Even if Ms. Sullivan did not follow common practice by failing to mail out "small papers," as alleged by the Reshes' expert, the failure to mail "small papers" does not sufficiently allege a claim for negligence absent any legally imposed duty in West Virginia to do so, and there is no evidence that this oversight occurred with any intent to mislead or defraud the Reshes. Furthermore, the Reshes signed several documents, prior to closing, indicating that they read and agreed to the terms contained therein; they had a representative throughout the entire closing process; and the nature of the transaction was clearly identified in the closing documents

---

[6] Although part of the Real Estate Sale Agreement details the duties of the designated escrow agent, nothing in the agreement implies duties like those advocated for by the Reshes. *Third Party Defs.' Mot. for Summ. J.* Ex. 3, at 12, ex. B, ECF No. 538.

9

(not in ambiguous terms as the Reshes now argue).

For these reasons, as well as the additional analysis incorporated from the Court's Memorandum Opinion and Order entered on February 12, 2016, ECF No. 660, the Court finds that the summary judgment standard was properly applied and that the Reshes failed to adequately dispute certain facts of record or provide "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Therefore, the Reshes' Motion to Amend or Alter Judgment with regard to Helen Sullivan and Lawyer's Title, ECF No. 685, is **DENIED**.

   3. Rule 59 Motion against HSBC Bank

After careful review of the Reshes' Motion to amend or alter judgment against HSBC Bank, the Court again concludes that the Motion does nothing more than attempt to re-litigate arguments previously raised in response to HSBC Bank's Motion for Summary Judgment, ECF No. 557. Therefore, as a full and complete response to the Reshes' arguments in their Rule 59 Motion, the Court incorporates the entirety of its analysis from its Memorandum Opinion and Order entered on February 8, 2016, ECF No. 649.

The Reshes' main contention regarding a "clear error of law" in the Court's findings with HSBC Bank, is that the Court erred "by ignoring substantial record evidence that a special relationship existed between the Reshes and BLX [Capital],"[7] *Defs.' Mem. in Supp. of Mot. to Amend* 7, ECF No. 688, and "by holding that because there was no 'special relationship' between BLX [Capital] and the Reshes, the Reshes could [not sustain defenses or counterclaims] for fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and

---

[7] BLX Capital is the predecessor to HSBC Bank. HSBC Bank filed this instant action as indenture trustee and successor of BLX Capital.

negligence," *id.* at 10. As previously stated in the Court's February 8, 2016 Memorandum Opinion and Order, ECF No. 649, all of the Reshes' counterclaims and defenses are based on alleged acts or omissions of BLX Capital in the course of its activities as the lender in the contractual relationship between BLX Capital and the Defendants. Specifically, the Reshes allege that BLX Capital failed to verify the accuracy of the appraisals provided to it and failed to supervise and monitor the closing of the loans. *Id.* at 10–15.[8]

Under West Virginia law, a plaintiff "cannot maintain an action in tort for an alleged breach of contractual duty." *Lockhart v. Airco Heating & Cooling, Inc.*, 567 S.E.2d 619, 624 (W. Va. 2002). Rather, "[t]ort liability of the parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation." *Id.* (citation omitted). The West Virginia Supreme Court of Appeals has referred to this relationship as a "special relationship" between the parties. *Aikens v. Debow*, 541 S.E.2d 576, 583 (W. Va. 2000). In the context of a borrower and lender, a "special relationship" does not arise unless "a lender performs services not normally provided by a lender to a borrower." *Blackburn v. Consumer Portfolio Servs., Inc.*, No. 2:11-00401, 2012 WL 1679796, at *2 (S.D.W. Va. May 14, 2012). This "special relationship" requirement was illustrated

---

[8] Regarding the Reshes' argument that BLX Capital failed to supervise and monitor the closing of the loan, the Court notes that upon further review of the Commitment Letters, the Letters do state "[y]ou hereby authorize and request BLXC . . . to supervise the closing of the loan." *Pl.'s Mot. for Summ. J.* Ex. 13, at 5, ECF No. 539. However, although this language exists, the Reshes did not bring a breach of contract claim against BLX Capital, alleging that BLX Capital breached this part of the contract. Further, the Court interprets this language narrowly, understanding it to mean that BLX Capital would supervise the closing the loan between BLX Capital and the Reshes. The Court does not find that this language broadly infers that BLX Capital would be responsible for the closing of the entire transaction between the Reshes, Peanut Oil, LLC, and other parties in this case (as the Reshes seem to argue). Therefore, for these reasons, as well as the reasons discussed above in the Court's analysis of the Reshes' tort claims, this argument fails and the Court did not commit a "clear error of law" on this point.

11

in *Glascock v. City Nat'l Bank of West Virginia*, 576 S.E.2d 540 (W. Va. 2002), where the Court held that because "the bank was significantly involved in the construction of the Glascock home," it "create[d] a special relationship with the borrower by maintaining oversight of, or intervening in, the construction project," and "that relationship brings with it a duty to disclose any information that would be critical to the integrity of" the project. *Id.* at 545–46.

Here, this case is different from *Glascock* in that there is no evidence of a "special relationship" between BLX Capital and the Reshes. Rather, the Reshes continue to only present evidence indicating the services provided by BLX Capital were allegedly <u>less than</u> the services normally provided by a lender to a borrower. In other words, where the court in *Glascock* found a special relationship existed because the bank was overly involved in the construction of the Glascock home, this Court finds no special relationship existed between the parties because the evidence indicates that BLX Capital's involvement with the Reshes falls on the other end of the spectrum.

Additionally, to the extent the Reshes make any argument that these alleged shortcomings of BLX Capital were affirmative tortious acts, outside of any contractual relationship, the Court finds that BLX Capital owed no duty to the Reshes to insure the appraisal values. The Supreme Court of Appeals of West Virginia instructed in *Glascock* that a lender is not "an insurer of the work performed or of an inspection or appraisal conducted on its behalf." *Glascock*, 576 S.E.2d at 546.[9] Therefore, BLX Capital had no duty to the Reshes to insure the appraisal value or discover

---

[9] The Reshes cite *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013) which states "a lender that informs a borrower about how much her property is worth, whether required to do so or not, is under an obligation not to misrepresent that value." This case is distinguished from *McCauley*, because in *McCauley* the defendant bank claimed that it never told plaintiff that the appraisal value of her home was $51,000, but simply offered her a loan for that amount. *McCauley*, 710 F.3d at 558. In other words, plaintiff thought her home was worth $51,000 because of defendant bank's loan offer; however, defendant bank alleges it never represented to

flaws within the appraisals.[10] This was simply not part of BLX Capital's duty (outside of any contractual agreement to perform these tasks).[11]

Therefore, absent a breach of contract claim and a special relationship between the parties, the Reshes cannot maintain claims for fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, or negligence against the HSBC Bank, the successor of BLX Capital. Regarding their remaining claims, the Reshes put forth no new evidence, but rather, recycle arguments previously made in their response to HSBC Bank's Motion for Summary Judgment, ECF No. 557. Therefore, for these reasons discussed above, in addition to the analysis incorporated from the Court's Memorandum Opinion and Order entered on February 8, 2016, ECF No. 649, the

---

plaintiff that it was basing the loan amount off an appraisal value. *Id.* at 558–59.

Here, in contrast, BLX Capital indicated in the Commitment Letters that it was relying on appraisals "ALREADY OBTAINED," when offering the Reshes a loan amount. *Pl.'s Mot. for Summ. J*. Ex. 13, ECF No. 539. In other words, BLX Capital relied on actual appraisal values when making the loan to the Reshes, unlike defendant bank in *McCauley*. Although the Reshes claim these appraisals were faulty, they had been provided to BLX Capital by the Reshes' own mortgage broker, and, as previously discussed, BLX Capital did not have a duty to insure them. *See Glascock*, 576 S.E.2d at 546. Therefore, this case is distinguished from *McCauley*, and the Court's previous ruling, ECF No. 649, does not violate *McCauley's* holding.

[10] The *Glascock* Court stated in full:
> Our ruling should not be taken to mean that a traditional lender is in any way the insurer of the property that is the subject of the loan. Nor is the lender an insurer of the work performed or of an inspection or appraisal conducted on its behalf. Our ruling does not ask lenders to be engineers, or architects or home inspectors. As we stated, the duty is defined by the risk perceived.

*Id.*

[11] The Reshes repeatedly allege that absent a breach of contract claim and a special relationship, they are still permitted to maintain tortious causes of action against HSBC Bank. They offer no legal citations evidencing support of this argument, but rather baldly assert "[o]bviously, if any party to a contract, including a lender, for example, fraudulently induces anther party, including a borrower, to enter into the contract, it is not a defense to a suit for fraud that there was no 'special relationship' between the parties." *Defs.' Mem. in Supp. of Mot. to Amend* 11, ECF No. 688. This assertion is too general. The lack of a special relationship between the parties here does preclude tortious suit against HSBC Bank. This is because absent a special relationship or contractual duty, there was no positive legal duty on BLX Capital to vet the appraisals previously provided to them or to investigate the Agreement's terms or parties as part of a closing.

Court finds that it made no "clear errors of law" in its previous ruling and the Reshes' Motion to Amend or Alter Judgment with regard to HSBC Bank, ECF No. 687, is **DENIED**.

### IV. Conclusion

For the foregoing reasons, as well as the reasons incorporated herein from the Court's Memorandum Opinions and Orders issued on August 12, 2015, February 8, 2016, and February 12, 2016, ECF Nos. 506, 649, 660, Defendants/Third Party Plaintiffs/Fourth Party Plaintiffs Ron Resh and Valarie Reynolds-Resh's Motions to Alter or Amend Under Rule 59 From Final Judgment Against Plaintiff HSBC Bank, Third Party Defendants Helen Sullivan and Lawyer's Title, and Fourth Party Defendants Upland and LubeCenter are **DENIED**. ECF Nos. 683, 685, 687.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: July 29, 2016

_____
ROBERT C. CHAMBERS, CHIEF JUDGE